DAVID OGLE

v.

V. A. TURPIN et al.

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1.  ASSIGNEE *of note secured by mortgage—how far protected—and of the mode of securing protection as to the mortgage security.*  Where a mortgagee, after an assignment of the notes secured by his mortgage, acquires the equity of redemption, and enters a formal release of the mortgage upon the record, a party taking a mortgage from him upon the same premises without notice of the assignment of the notes, will acquire a lien superior to that of the holder of the assigned notes.

2.  There being no presumption of law that the payee of notes secured by mortgage has transferred the same before purchasing the equity of redemption from the mortgagor, a person taking a mortgage from the payee will not be held chargeable with notice that the notes secured in the first mortgage have been assigned, but he may rely upon the record, as showing title in his mortgagor.

3.  An assignee of notes secured by mortgage may protect his equitable lien on the mortgaged premises, by taking and putting upon record an assignment of the mortgage, so as to give notice of his interest, and thereby prevent others from being deceived by any subsequent satisfaction entered of record by the mortgagee.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. DENT & BLACK, for the appellant:

The indorsement by Runyan of the notes of Allen, and the delivery over of the same, together with the mortgage, operated to give Ogle all the rights of an assignee of the mortgage.  *Keohane* v. *Smith,* 99 Ill. 156; *Swift* v. *Smith,* 102 U. S. (12 Otto,) 442; *Vansant* v. *Allmon,* 23 Ill. 31; *Olds* v. *Cummings,* 31 id. 188; *Fryer* v. *Rockefeller,* 63 N. Y. 276; *Crofts* v. *Webster,* 4 Rawle, 242; *Mott* v. *Clark,* 9 Pa. St. 405; *Rigney* v. *Lovejoy,* 13 N. H. 247; *Wilson* v. *Kimball,* 27 id. 300.

Assignments of mortgages are not required to be recorded. *Walker* v. *Dement,* 42 Ill. 278.

There was no merger in the case by the conveyance from Allen to Runyan, nor is it to be regarded as given by way of satisfaction and discharge of the mortgage. *Edgerton* v. *Young,* 43 Ill. 464; *Dunphy* v. *Riddle,* 86 id. 22; *Goff* v. *Denny,* 2 Phila. 275; *Campbell* v. *Vedder,* 42 N. Y. 174; *Purdy* v. *Huntington,* 42 id. (3 Hand,) 334.

The circumstances put the parties upon inquiry. *Pratt* v. *Bank of Bennington,* 10 Vt. 293; *Swift* v. *Smith,* 102 U. S. (12 Otto,) 449.

According to the well-settled doctrine of this court, no written assignment of the mortgage was necessary to be taken by Ogle, and hence he was not at fault or negligent in not taking a written assignment. In New York, as well as in this State, the record of such an assignment would be permitted, but there the courts have held it to be necessary only with reference to subsequent purchasers of the mortgage itself. *Greene* v. *Warwick,* 64 N. Y. 220; *Campbell* v. *Vedder,* 42 id. (3 Keyes,) 174.

Messrs. Dupee & Judah, for the appellees:

In Pennsylvania it was held, that an assignment of a mortgage was not "a conveyance of and concerning land," and therefore not within the provisions of their recording acts. *Crofts* v. *Webster,* 4 Rawle, 255; *Mott* v. *Clark,* 9 Barr, 405; *Goff* v. *Denny,* 2 Phila. 275.

In Indiana, prior to the act of 1877, there was no law providing for the recording of assignments of mortgages, therefore the assignee in that State is not held chargeable with negligence in failing to have his assignment recorded. *McCormick* v. *Digby,* 8 Blackf. 98; *Lapping* v. *Duffy* 47 Ind. 50; *Hasselman* v. *McCornan,* 50 id. 443; *Dixon* v. *Hunter,* 57 id. 278.

In New York, it seems, the recording of an assignment of a mortgage is necessary only against a subsequent assignee of the same mortgage. *Campbell* v. *Vedder*, 40 N. Y. (3 Keyes,) 178; *Purdy* v. *Huntington*, 42 id. (3 Hand,) 338; *Greene* v. *Warwick*, 64 id. 226.

The terms, "instruments relating to or affecting the title to real estate," and "other writings of or relating to the sale, conveyance, or other disposition of real estate, or any interest therein," etc., in our Recording law, it seems, would include and authorize the recording of assignments of mortgages. Rev. Stat. 1874, ch. 30, secs. 20, 28, 30, 38, and ch. 115, secs. 1, 9.

That an assignee of a mortgage is required, under a penalty, to enter satisfaction of record on payment, is a recognition of such assignments as coming within the provisions of the Recording law.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears from the record, that in August, 1874, Runyan held several notes, payable to himself, on Herman R. Allen. They bore date the 31st of July, 1874, payable in one, two and three years, and secured by mortgage on lands in Cook county, of even date, and duly recorded. Runyan, for a valuable consideration, indorsed to appellant, Ogle, and delivered them, with the mortgage, to him. In the spring of 1875 Runyan obtained a deed for the mortgaged premises from Allen, for the equity of redemption. Runyan, thereupon, and before the notes were due and were still unpaid, without the consent or knowledge of Ogle, on his apparent title, which appeared to be perfect of record, negotiated and obtained a loan of $20,000 from the Fidelity Savings Bank and Safe Depository, and to secure the same executed a trust deed to Arnold Tripp, with the usual power of sale. It does not appear that Haines, the president, or Tripp, the attorney of the bank, or any of its officers, had any other

notice that Ogle still held the Allen notes and they were not paid, than can be inferred from the title as it stood of record when the loan was made. Ogle filed his bill to foreclose this mortgage which Runyan had released of record, given by Allen to Runyan, to secure his notes as assignee of the notes, against the bank, and Turpin having been appointed receiver of the bank, was made a defendant. On a hearing in the Superior Court of Cook county the bill was dismissed. Complainant thereupon removed the case to the Appellate Court for the First District, where, on a hearing, the decree of the Superior Court was affirmed, and he brings the record, on appeal, to this court, and urges a reversal.

Neither party denies the validity or fairness of the debt of the other, as against Runyan, or that both were liens on the property when the deed of trust was executed and delivered to Tripp, but the question is whether the bank did not obtain a superior lien by that deed, or took their lien subject to Ogle's, and the whole question seems to resolve itself into one of whether there was negligence on the part of the bank. Appellant claims that the bank had no right to rely alone on the record of the title to the property, which showed that it was clear, but as the notes given by Allen were not then due, that it should have made inquiry as to whether or not they were paid, and were not, as the fact proved to be, in the hands of an innocent holder, and the bank having failed to exercise ordinary care, it should have its claim postponed to that of appellant. On the other side it is claimed, that when it appeared that Runyan had procured Allen's equity of redemption in the property, and had released and satisfied his mortgage, the bank had a right to rely on the record, and was not bound to make further inquiry, and it took the preferred lien.

It has not been suggested of whom the bank should inquire. It inquired of Runyan, and he said the title was good for the property. Had the bank inquired of Allen, he could only

have given information that he had not paid the notes, but could not have referred the bank to any person as assignee of the notes, and it was not required to go into the commercial world to find a holder. The mortgage showed the notes were payable to Runyan, and when he released the mortgage the bank had the right to presume the notes were paid, or if not, that he had waived and released the mortgage security, and was willing to look to the responsibility of the maker, or had obtained other security. We think the mere fact that the time of payment had not arrived, was not sufficient to put the bank on inquiry, or to charge it with notice that the notes had been indorsed to appellant, and were unpaid, and to give his claim a preference the bank must have had notice in fact, or of circumstances pointing to notice.

The release or cancellation by the mortgagee is *prima facie* a satisfaction, but may be shown, as between the parties, to have been made by mistake, accident or fraud, as was said in *Flower* v. *Elwood*, 66 Ill. 444. But the question remains, whether the same rule applies to innocent purchasers and incumbrancers. The ruling of this court has been, under our recording laws, that a purchaser or incumbrancer may rely on, and be protected by, a clear and regular title of record, unless affected by notice of secret adverse titles or liens. Such was the manifest object and purpose of this law, and it has ever been so enforced. The very object is, that all persons having any deed, mortgage, or other instrument in writing relating to or affecting the title to land, shall record it, or failing to do so, as against innocent subsequent purchasers or lienholders he must be precluded from asserting his claim. Runyan's release of the mortgage held against Allen was *prima facie* a satisfaction,—that the bank, in the absence of notice, or what is equivalent to notice, might act.

But it is urged that Runyan, having acquired the equity of redemption, could not release the premises from the mortgage to himself; that such an act was nugatory, and

affected or changed the rights of no one; that having no legal or binding effect, appellant's lien under the mortgage remained unimpaired, and the bank did not acquire a lien superior to his. As between Runyan and appellant this is true, and the same thing may be said as to subsequent purchasers or lienholders with notice, but we are unable to extend the rule to persons acting without notice or anything to put them on inquiry. The bank had no such notice, or reason to suppose the notes were outstanding and unpaid. On the contrary, the facts and circumstances before its officers justified the reasonable inference that they had been paid or canceled, and taken up. This would be the reasonable inference deducible from the fact that Runyan united the equity of redemption with the interest he held under the mortgage, thus becoming the owner of the fee. That act, of itself, would induce the belief that the debt had been canceled by Runyan becoming the absolute owner in fee, and the lien extinguished. Persons uninformed of this fact would reasonably suppose, when he was the absolute owner of the property, that he did not look to it as security for the payment of the notes named in the mortgage,—they would infer that the debt was paid, discharged, or otherwise secured, and the lien extinguished. The bank officers were therefore fully justified in that conclusion, and in acting upon the inference.

The case of *Edgerton* v. *Young*, 43 Ill. 464, is referred to as controlling this case. It differs from this in the material fact that the mortgagee in that case had not entered a satisfaction of the mortgage on the record. When the attorney of the bank found it thus satisfied, in this case, without circumstances to put him on inquiry, he had a right to rely on the record of satisfaction. As the record stood, it showed that Runyan was the owner of the title, free from incumbrance. The assignment of the notes operated as an equitable assignment of the mortgage, and the assignment was an instrument that related to or affected the title to land,

and to become operative as to creditors and purchasers the assignment of the mortgage should have been formally made and recorded, to charge notice to all persons dealing with the title, or at least the assignment on the note should have referred to the mortgage, and that assignment should have been recorded. As between the parties, the mere assignment, without recording, was all that was required to assign the mortgage, but as to strangers it was otherwise.

It is also said that *Keohane* v. *Smith*, 97 Ill. 156, announces a different rule. This we regard as a misapprehension. The two cases are clearly distinguishable in some of their material facts. In that case the second mortgagee was fully informed that the prior mortgage was unsatisfied and the note outstanding and unpaid, and it was agreed that of the money the borrower obtained from the lender the first mortgage debt should be paid and discharged, and the borrower and the agent of the lender went to Runyan and paid the money to him without the surrender of the note, or even any inquiry about it. Runyan was not the agent for the holder of the note, and had no right to receive the money. There, the lender knew of the existing mortgage, and provided for its payment. Here, there was no notice of the prior mortgage. There, the negligence did not consist in failing to learn of the first mortgage, as it stood of record unsatisfied, and the lender was notified of the fact. Here, the mortgage of record was released and satisfied. The negligence in that case was in the attempt to pay the prior mortgage debt to a person having no authority in fact to receive the money, and in not requiring the production of the note, and its surrender, when the money was paid. It is this gross negligence in not taking up the note, and the knowledge of the second mortgagee, that are the principal distinguishing facts between that and this case.

It is claimed that the Appellate Court felt bound by its former decision, and refused to review it when this case was before it a second time, when it rendered the decree from

which this appeal was prosecuted, and that was error. We presume that court refused to do so because it was satisfied that the proper decision of the case precluded them from deciding otherwise than they did. All we have to do is to determine whether the judgment or decree of that court is erroneous, as claimed, and to reverse or affirm, as the law may require. We have no concern with the question whether they felt bound by their former decisions, or are disposed to review and overrule or modify them. It is no part of our province to determine such questions. We can only look to the record of that court to determine whether it contains error for which the judgment should be reversed.

A careful examination of the record in this case fails to disclose any error for which the decree of the Appellate Court should be reversed, and it is affirmed.

*Decree affirmed.*

Mr. JUSTICE DICKEY: I concur in this decision. When the mortgagee bought the lands, or rather the equity of redemption, had he been at that time the holder of the notes secured by the mortgage, the mortgage would have become merged, and the title would have stood, by operation of law, complete in the mortgagee, divested of any lien of the mortgage, unless, for some peculiar reason, he chose to keep the mortgage alive. The release of the mortgage of record was a declaration that he did not so choose. Runyan having assigned the notes, was a trustee for Ogle, but his trust relation was not known to the bank. Under the circumstances there was no presumption that the payee of a promissory note had assigned the same. The second mortgagee in this case, as I think, had a right to assume that the payee of the notes, if they were not paid, still held the same, and that the mortgage had merged. The release by the mortgagee in the first mortgage was simply a declaration on his part that he did not desire to keep alive that mortgage made upon

property which he himself then owned. There is no hardship in this. When a man buys notes secured by mortgage he becomes thereby the equitable assignee of the mortgage, and acquires an equitable interest in the mortgaged lands. If he wishes to protect that interest against subsequent purchasers, he may do so by taking a written assignment of the mortgage, and placing that assignment upon record. Possibly a record of the assignment of the note would be sufficient. Where it is the duty of any one to see that commercial paper is paid, a payment to the payee not in possession of the paper will not affect the assignee. That was the case in *Keohane* v. *Smith,* and on that point that case turned. In that case, had the second mortgagee sold and assigned to an innocent purchaser the note and mortgage, and had that assignment been placed upon record, the case ought to have been decided against the holder of the note secured by the first mortgage. The distinction between that case and this consists, in my judgment, in the fact that there the second mortgagee, in substance, undertook to pay the debt in the first mortgage, and by her own negligence paid the wrong man. Here the second mortgagee did not undertake to discharge the first mortgage debt. He relied upon a release by the trustee, who he had a right to assume had done his duty.