FRANK A. HENSHAW *et al.* Appellees, *vs.* THE STATE BANK
OF WEST PULLMAN, Appellant.

*Opinion filed April 23, 1909.*

1. LACHES—*laches should be set up in trial court.* Laches, to
be availed of as a defense, should be set up in the trial court.

2. BANKS—*endorsement by person as "trustee" puts bank on
inquiry as to nature of trust.* Where a bank is offered, as collat-
eral security, a water-service certificate issued to a certain person
and bearing that person's endorsement, followed by the endorse-
ment of another person as "trustee," the bank is bound to inquire
into the nature of the trust, of the existence of which the endorse-
ment gives notice, and if it is satisfied to accept the false statement
of the borrower that the certificate is the private property of the
trustee, it is not entitled, in equity, to protection as against the
real owners of the certificate, whose ownership would have been
disclosed by reasonable inquiry.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. THEODORE BRENTANO,
Judge, presiding.

This is a suit over the fund represented by two certifi-
cates issued by the department of public works of the city
of Chicago. The first one was numbered 79, dated Novem-
ber 11, 1890, and certified that D. S. Place had advanced
$7164.35 for laying water pipes, and that the amount would
be refunded to him, without interest, from any money be-
longing to the water tax fund in the city treasury not oth-
erwise appropriated, when the permanent revenue from the
said pipes should equal five cents per foot annually. This
certificate was endorsed, when delivered to the appellant
bank, as follows: "D. S. Place, H. W. Christian, Trustee
of Chicago Auburn Park Land Trust." The second cer-
tificate was numbered 182, issued by said department of
public works, and certified that D. S. Place & Co. had
advanced the sum of $3795.12 for laying water pipes, to

be refunded under the same terms and conditions as stated in the other certificate. Certificate 182, when delivered to the bank, was endorsed, "D. S. Place & Co., H. W. Christian, Trustee of Chicago Auburn Park Land Trust." The fund represented by these two certificates was deposited by Place and Place & Co. with the city of Chicago for putting in water pipes in a subdivision known as West Auburn. The moneys were originally furnished by a syndicate composed of about twenty persons, each share representing $5000. On May 7, 1892, the name of the syndicate was changed to "The Chicago Auburn Park Land Trust," and five trustees were elected and executed a declaration of trust introduced in evidence, which was filed for record in the recorder's office of Cook county May 11, 1892. The trust took over the assets of the syndicate, including the water-service certificates. In 1898 Place, one of the trustees, died, and by the action taken in pursuance of the declaration of trust H. W. Christian was made a trustee. He was not, however, a member of the syndicate and never owned any interest in the land of the Chicago Auburn Park Land Trust but received a small salary as trustee. The certificates were placed in the hands of H. W. Christian on December 31, 1902, apparently on his representations that he could effect an arrangement with the city whereby the latter would make a present payment on them. Subsequently Christian's brother, James H. Christian, applied to the appellant bank and on January 13, 1903, obtained a loan of $2500, for which H. W. Christian gave his note. He also obtained $2500 upon a note executed by Mary J. Christian, giving as collateral security for these two notes said certificate No. 79. In the year 1902 the appellant bank loaned one A. B. Rockwell $2500 on his personal note, without other security. When this note came due, February 4, 1903, at Rockwell's request the bank renewed the loan upon receiving as collateral security said certificate No. 182.

The original bill of complaint in this case was filed by the other trustees of the Chicago Auburn Park Land Trust, except Christian, and prayed that Christian should be directed to deliver the certificates to the bank as trustee, and on February 4, 1905, the court so decreed. Failing to obtain the certificates and being unable to find H. W. Christian when they sought to serve him with a writ of attachment, the appellees filed a supplemental bill March 31, 1905, making the unknown owners and holders of the certificates parties defendant. The appellant bank answered, setting up its title to the certificates. The superior court of Cook county entered a decree upon this supplemental bill, reversing the former decree and adjudging the bank to be the lawful, absolute and rightful owner of said certificates, having become the purchaser for value, and without notice, of any kind or character, of any interest of the appellees. The Appellate Court reversed the decree and remanded the cause, holding that the appellant bank purchased with notice and that said certificates were the property of appellees. From the judgment of the Appellate Court this appeal was taken.

WILLIAM E. O'NEILL, for appellant:

The character of the endorsement of H. W. Christian was neither express nor constructive notice to the bank that the certificates were trust property. 2 Morse on Banks and Banking, (4th ed.) sec. 604; *Mayer* v. *Bank,* 86 Mo. App. 108; *Turnbull* v. *Freret,* 17 La. 703; *Fletcher* v. *Schaumburg,* 41 Mo. 501; *Powell* v. *Morrison,* 35 id. 244; *Thornton* v. *Rankin,* 19 id. 194; *Jeffries* v. *McLean,* 12 id. 538.

The words, "Trustee of Chicago Auburn Park Land Trust," appended to the endorsement of H. W. Christian, are no notice of any interest on the part of the land trust, but are to be regarded as merely *descriptio personæ.* Cases cited *supra; Hately* v. *Pike,* 162 Ill. 241; *Chadsey* v. *McCreery,* 27 id. 253; *Beach* v. *Peabody,* 188 id. 75; *Baker* v. *Ormsby,* 4 Scam. 325.

The instruments in question are assignable by endorsement at common law and under section 4 of chapter 98 of Hurd's Revised Statutes of Illinois so as to vest the legal title in the assignee, so as to enable such assignee to maintain an action in its own name thereon. Therefore the delivery of the instruments in question, which were endorsed in blank by the payee, to the State Bank of West Pullman for a valuable consideration vested the legal title to said instruments in the said bank. 1 Schouler on Personal Prop. sec. 84; *People* v. *Johnson,* 100 Ill. 537; *Newell* v. *School Directors,* 68 id. 514; *Turner* v. *Railroad Co.* 95 id. 134; *Henley* v. *Bush,* 33 Ala. 636; *Agee* v. *Matlock,* 25 id. 281; Story on Bills, sec. 207; Chitty on Bills, 255.

The assignee of a non-negotiable instrument or other chose in action takes it subject only to the equities existing in favor of the maker or debtor against the original payee or obligee, and not subject to the latent equities of third persons in the subject involved in the assignment, of which he had no notice. *Murry* v. *Lylburn,* 2 Johns. Ch. 441; *Silverman* v. *Bullock,* 98 Ill. 11; *Olds* v. *Cummings,* 31 id. 192; *Barbour* v. *White,* 37 id. 164; *Himrod* v. *Gilman,* 147 id. 293; *Sumner* v. *Waugh,* 56 id. 531; *Judson* v. *Corcoran,* 17 How. 612; *Baker* v. *Wood,* 157 U. S. 212; *Tison* v. *Loan Ass.* 57 Ala. 323; 2 Am. & Eng. Ency. of Law, (2d ed.) 1081; *Crosby* v. *Tanner,* 40 Iowa, 136; *Y. M. C. A.* v. *Bank,* 179 Ill. 599; *Bank* v. *Railroad Co.* 59 Atl. Rep. 134.

KERR & KERR, for appellees:

The appellant bank has no standing in a court of equity, for the reason that its holding of the papers in question is tainted by bad faith. Its president knew that this was trust property. He was bound to know that the endorser, as a trustee, could not deal with trust property on his own account, and was bound to know that a trustee has no right to pledge trust property for his individual debt. *Title and*

*Trust Co.* v. *Brugger,* 196 Ill. 96; *Railroad Co.* v. *Swannell,* 157 id. 616; 28 Am. & Eng. Ency. of Law, 1111, 1128, 1129; *Bank* v. *Hyde Park,* 101 Ill. 595; *Railroad Co.* v. *Kennedy,* 70 id. 350; *Henneberry* v. *Morse,* 56 id. 394; *Russell* v. *Ranson,* 76 id. 167; *Fast* v. *McPherson,* 98 id. 497; *Shaw* v. *Spencer,* 100 Mass. 382; *Insurance Co.* v. *Spaids,* 99 Ill. 249; *Isom* v. *Bank,* 52 Miss. 902; Underhill on Trusts, 498; *Swan* v. *Bank,* 24 Hun, 277; 1 Perry on Trusts, 270, 271; *Duncan* v. *Jandon,* 15 Wall. 165; *Gold Mining Co.* v. *Stark,* 106 Fed. Rep. 568.

The certificates were not assignable at the common law or under the statute so as to vest the legal title in the transferee or the holder. They were payable only upon a contingency which may never happen. *Baird* v. *Underwood,* 74 Ill. 176; *Kelley* v. *Hemmingway,* 13 id. 604; *Husband* v. *Epling,* 81 id. 172; *Kingsbury* v. *Wall,* 68 id. 311; *Potter* v. *Gronbeck,* 117 id. 404; *VanZandt* v. *Hopkins,* 151 id. 248.

Mr. JUSTICE CARTER delivered the opinion of the court:

The main question argued in this case is whether the appellant bank took the certificates in good faith, without notice of appellees' title. The evidence in this record shows that when James H. Christian took the first certificate to the appellant bank he told the president of the bank that the certificate was given to his brother, H. W. Christian, when a division was made by the trustees of the land association, as his part of the profits of the land trust. The president thereupon told Christian that he would have to obtain the endorsement of H. W. Christian. The certificate was already endorsed by D. S. Place. James H. Christian thereupon took the certificate away and brought it back with the endorsement on the back, "H. W. Christian, Trustee of Chicago Auburn Park Land Trust." The bank officials made no further inquiry as to why the certificate was endorsed "trustee." The president of the bank testified that

when the second certificate was presented he supposed it was owned in the same way and was satisfied with the same endorsement, "H. W. Christian, Trustee of the Chicago Auburn Park Land Trust." This court, in *Chicago Title and Trust Co.* v. *Brugger,* 196 Ill. 96, held that where a trustee having no title to a trust deed and note fraudulently transferred them to a trust company, it devolved upon the trust company to show that it took the paper in good faith, without notice, for value and before maturity, in the usual course of business, and that where the note and trust deed bore endorsement showing that another person than the trustee was the legal holder of the note, a purchaser from the trustee who relied upon his explanation of the endorsement instead of making inquiry as to the ownership of the note was not entitled to protection as against the legal holder of the note, whom the trustee had defrauded in making the sale. In *Shaw* v. *Spencer,* 100 Mass. 382, it was held that when a certificate of stock in the name of A. B, trustee, was pledged by him to secure his own debt, the pledgee was by the terms of the certificate put on inquiry as to the character and limitations of the trust, and if he accepted the pledge without inquiry, did so at his peril. In *Geyser-Marion Gold Mining Co.* v. *Stark,* 106 Fed. Rep. 558, the title of stock was in the name of C. D., trustee, and that court said that the word "trustee" meant something. "It is a warning and a declaration to everyone who reads it that the person so named is not the owner of the property to which it relates; that he holds it for the use and benefit of another, and that he has no right or power to sell or dispose of it without the assent of his *cestui que trust.*" The record in this case is clear that these certificates were not the property of H. W. Christian, and that if the bank officials had made reasonable inquiry they could readily have ascertained that fact.

Our attention has been called by appellant to *Barbour* v. *White,* 37 Ill. 164, *Silverman* v. *Bullock,* 98 id. 11, and

*Olds* v. *Cummings,* 31 id. 188, where the rule is laid down that although the assignee of a mortgage takes it subject to. equities in favor of the maker, he does not take it subject to latent equities in favor of third persons of which he had no notice. We do not think that line of authorities has any particular bearing on the question here under discussion. The bank had notice by the endorsement of H. W. Christian as trustee. If it chose to rely on the false statement of the one that presented the certificates that they belonged to H. W. Christian, instead of making an inquiry as to the real ownership, it was not entitled to protection against such owners. The Appellate Court rightly decided that the bank took these certificates with notice of appellees' title.

We think the contention of the appellant that appellees are estopped from disputing the bank's title or Christian's power to. dispose of the certificates because said Christian had been clothed with all the usual indicia of ownership of the certificates is without 'force, in view of what we have said with reference to the appellant bank being notified, by endorsement and otherwise, that Christian held these notes only as trustee.

The further contention of appellant that appellees were without authority to bring this suit as trustees under the declaration in question cannot be sustained. The trust agreement gave the trustees power to represent the shareholders in all suits or legal proceedings, and the agreement further provided: "Whether the trust be determined by lapse of time or otherwise, their powers shall continue for the purpose to prosecute and defend all suits and legal proceedings pending at the time of such termination of the trust" and "to do all other acts necessarily or properly incidental" to winding up the trust. The recovery of these certificates, the property of the trust, is clearly for the benefit of the stockholders and properly incidental to winding up the trust. This agreement authorized this action to be

taken and begun after the ten years provided for during which it was to remain in force.

The further contention of appellant that these proceedings cannot be upheld because appellees are guilty of *laches* is without force, even though that point could be raised for the first time in the Appellate Court, as seems to have been the case in this proceeding. *Laches,* to be availed of as a defense, should be set up in the trial court. *Zeigler* v. *Hughes,* 55 Ill. 288; *Spalding* v. *Macomb· and Western Illinois Railway Co.* 225 id. 585; *Schnell* v. *City of Rock Island,* 232 id. 89.

Other points are raised in the briefs, but what we have already said disposes of all the material questions involved.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*