Polish National Alliance of the United States of North America, Appellant, v. Paul B. Lipinski et al., Appellees.

### Gen. No. 38,765.

Opinion filed January 27, 1937.

George Gillette and Elmer M. Leesman, both of Chicago, for appellant.

Harry Z. and Bernard Perel, of Chicago, for appellees; Abraham H. Maller, of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

The question to be decided in this case is: Which of the parties to this suit, the complainant or the defendants, shall have a prior lien on the premises described in the bill of complaint? The trial court found for the defendants and that the lien of their trust deed was not destroyed by the wrongful action of the trustee in releasing the same.

The facts as set forth in the briefs and abstract are substantially as follows:

The complainant is the owner of notes secured by a mortgage from Paul B. Lipinski and wife to Polish National Alliance securing a note for the sum of $17,000, dated November 26, 1928. The defendants are the owners of real estate bonds issued by said Lipinski amounting to $10,000, secured by a trust deed on the same property, dated January 17, 1928.

Mary Czaszewicz was the owner of the note secured by a trust deed made to her, dated March 21, 1924, payable three years after said date, for the sum of $11,000, upon which $1,000 was paid, which was a first lien upon the same premises, and concerning which there is no dispute.

The controversy in this case arises because of the action of the trustee, the Northern Trust and Savings Bank of Hammond, Indiana, executing and filing for record in the recorder's office of Cook county, a release deed dated October 17, 1928, purporting to release the lien of the second trust deed dated January 17, 1928, from Lipinski and wife to the Northern Trust and Savings Bank, trustee, and this was done without the payment of the bonds secured thereby or obtaining possession thereof, or having same produced, and without the knowledge or consent of the owners thereof.

About that time a loan was made by the plaintiff Polish National Alliance of the United States of North

America (for brevity hereinafter referred to as Polish National Alliance) on, to wit, November 26, 1928, to Paul B. Lipinski and Lottie Lipinski, his wife, evidenced by one principal note for the sum of $17,000 and 10 interest notes for $510 each, payable semiannually beginning May 26, 1929, secured by a mortgage from Lipinski and wife to the Polish National Alliance dated November 26, 1928, on the property involved. The note for $10,000, secured by a first trust deed to Mary Czaszewicz, was paid off by the said Polish National Alliance out of the said $17,000, and the said Mary Czaszewicz is not concerned in this suit, nor is there any dispute but that the Polish National Alliance should have a first lien on these premises as successor to the rights of Mary Czaszewicz.

When the Polish National Alliance in 1931 commenced the foreclosure suit in the circuit court for failure of Lipinski and his wife to pay the interest claimed to be due according to the terms of their note and trust deed, the owners of the bonds under the trust deed of January 17, 1928, by name, were made parties defendant. Plaintiff must have learned their names by this time.

Subsequently, a bill was filed in the superior court by Sarah B. Pinkowsky and others to foreclose the lien of the trust deed which had been released by said Northern Trust and Savings Bank, as trustee. This bill to foreclose was filed by the said Sarah B. Pinkowsky et al., who was one of the defendants in the bill to foreclose theretofore filed in the circuit court by the Polish National Alliance. This latter bill was subsequently transferred under the statute to the circuit court on September 29, 1933, and consolidated with the former suit and by proper orders, the issues were made as between the plaintiff and defendants. No question is raised now as to any of these pleadings.

The Northern Trust and Savings Bank of Hammond, Indiana, was the trustee. Lipinski, the owner of the

land, was also the president of said bank. Lipinski was also the fee owner of the land here in question. The defendants to the suit to foreclose filed by the Polish National Alliance were the owners of the bonds issued under the trust deed and sold to them by Lipinski or said trustee bank. Lipinski, evidently intending to defraud the owners of said 12 bonds secured by the trust deed of January 17, 1928, arranged to make a loan from the Polish National Alliance, and on October 10, 1928, had caused the trustee bank to execute a release of the said trust deed securing said bonds of January 17, 1928, which release deed was placed of record in the recorder's office of Cook county, on October 17, 1928. The contest narrows down to the question of priority of lien as between the mortgage securing the $17,000 notes dated November 26, 1928, and recorded November 30, 1928, to the Polish National Alliance and the prior dated trust deed securing the $10,000 bond issue. Said trust deed dated January 17, 1928, and duly recorded January 31, 1928, secured said $10,000 bond issue.

It being agreed that the Polish National Alliance should have a first lien to the extent of the $10,000 paid to Mary Czaszewicz that leaves the remaining $7,000 and interest and costs in dispute.

For clarity we will recapitulate in each instance the relative order as to the date under which the various notes, bonds and incumbrances appear.

First, the mortgage securing the promissory note to Mary Czaszewicz for $11,000, upon which $1,000 was paid, was dated March 21, 1924, and was recorded in the recorder's office on March 28, 1924. The balance of this $10,000 note was subsequently paid on December 2, 1928, by the Polish National Alliance to Mary Czaszewicz out of the $17,000 which they loaned to Lipinski and his wife on November 26, 1928, and that mortgage was duly released by Mary Czaszewicz. This release deed was filed for record in the office of the recorder of

Cook county on January 2, 1929. It is agreed that the former interest of Mary Czaszewicz need not be considered in this case. It is agreed that as to the sum of $10,000 paid to Mary Czaszewicz by the Polish National Alliance, the latter became subrogated to her rights and entitled to a first lien on the said premises to the extent of $10,000.

Second, the trust deed from Lipinski and his wife to the Northern Trust and Savings Bank of Hammond, Indiana, as trustee, dated January 17, 1928, and recorded January 31, 1928, on the property herein involved, securing eight bonds signed by Paul B. Lipinski and Lottie Lipinski to the said trustee or bearer of $1,000 each and also four bonds signed by Paul B. Lipinski and Lottie Lipinski to the said bank, as trustee, for $500 each, all of which bonds were payable three years from the date appearing thereon, and are owned and held by the various defendants in this consolidated suit.

Third, the note dated November 26, 1928, to the Polish National Alliance for $17,000, which was signed by Paul B. Lipinski and Lottie Lipinski, his wife, and which was due and payable five years from its date, was secured by a mortgage deed dated November 26, 1928, from Lipinski and wife to the Polish National Alliance recorded November 30, 1928, and involved the same property.

The owners of the bonds claiming under the trust deed dated January 17, 1928, who were defendants in the foreclosure suit of the Polish National Alliance, take the position that the wrongful release of the trust deed securing their bonds is not sufficient to deprive them of their lien; that the complainant is not an innocent purchaser or lienor and is not entitled to priority, except as to the $10,000 which it paid to Mary Czaszewicz and that the record of title as disclosed was sufficient to put the complainant upon notice as to its

rights for several reasons, amongst which are the following:

(1) The trust deed which was wrongfully released shows the fact to be that it was given to secure 12 bonds payable to said bank as trustee or bearer, eight of which were for $1,000 each and four of which were for $500 each, all of them being due three years after date without the privilege of prepayment before that time and that these bonds were negotiable.

(2) They further contend that the fact that the bonds were for differing amounts, raises the presumption that they were intended to be sold to the public and the further inference that these bonds might be in the hands of the public.

(3) The signers of the bonds did not reserve the right to pay the said bonds before maturity.

(4) The title to the property being vested in a trustee and the real estate bonds which were made payable to said bank as trustee were notice to the world of the trustee's limited power to act in the matter.

No question is raised that a fraudulent release is void as between the original parties. This holding is substantiated by the decisions reached in the following cases: *Vogel v. Troy*, 232 Ill. 481; *Ogle v. Turpin*, 102 Ill. 148; *Mann v. Jummel*, 183 Ill. 523; *Havighorst v. Bowen*, 214 Ill. 90.

The various owners of the bonds claiming under the trust deed dated January 17, 1928, in which the Northern Trust & Savings Bank of Hammond, Indiana, is the trustee, further contend that the fraudulent release of the trust deed would have no effect upon the trust deed because of the failure of the Polish National Alliance to ask to see the bonds that the trustee said were "paid, cancelled and surrendered."

The Polish National Alliance, owners of the subsequently dated note and trust deed for $17,000, contend that they have a right to rely upon the release of the

trust deed made by the Northern Trust and Savings Bank of Hammond, Indiana to Lipinski which release deed was of record in the recorder's office; that they relied upon the same at the time they made the loan to Lipinski; that the statute relating to the recording of deeds protects them as against the claim of the bondholders under the trust deed from Lipinski to the Northern Trust and Savings Bank of Hammond, Indiana, trustee.

Therefore, the controlling questions to be decided in this case are: Did the subsequent purchasers or lienors have notice of the rights of the said bondholders? Did the subsequent purchasers or lienors have such notice or were they chargeable with having had such notice as if they had exercised the care a prudent man would use to put himself on inquiry as to the validity of the release? In cases of this nature the facts and circumstances surrounding the entire transactions of the parties must be considered as they are different in each case, and whether the subsequent purchasers or lienors had notice, either actual or constructive, or whether it or they could have had notice by the exercise of that diligence which the law requires, must be determined by the evidence in each case.

One of the main cases upon which counsel for the bond owners rely is a comparatively recent case which was before the Supreme Court of Illinois, entitled, *Kennell v. Herbert,* 342 Ill. 464. In that case Herbert executed a trust deed to Peterson to secure certain notes. Subsequently Herbert entered into a written contract to convey the premises to Kruse free and clear of all incumbrance. The abstract showed that there was a trust deed on the property to Peterson and that the trust deed was given to secure four notes dated October 18, 1919, all of which were due five years after date. The attorney for Kruse notified Herbert that he would have to obtain a release of the trust deed. Herbert applied to Peterson for a release of the trust deed,

although the notes were unpaid and he was without authority from the holder of the trust deed to do it. Herbert was told by Peterson that before Peterson would execute a release Herbert would either have to pay the $17,000 and interest or execute another trust deed on other property owned by Herbert. Herbert executed another trust deed on other property to Peterson as trustee. Peterson, as trustee, executed a release of the trust deed first above mentioned and delivered it to Herbert, who delivered it to the attorney for Kruse. The trust deed was released in 1919 and secured notes due five years from its date. It was released while Kennell was the holder of the notes secured by the trust deed. He had no knowledge of the release and had retained possession of the notes since they were purchased by him. At the time of the release Peterson did not have the trust deed and notes and so advised Herbert, but told Herbert they would get them and destroy them. After the release was executed the interest on the mortgage and the notes was paid regularly by the trustee. In December, 1925, the trustee filed a petition in bankruptcy and Kennell inquired of Herbert as to when the notes would be paid. He brought a bill to foreclose the trust deed, which bill was dismissed by the trial court and the decree of dismissal was affirmed by the Appellate Court. The Supreme Court reversed the judgment of the Appellate Court and the decree of the circuit court and remanded the cause with directions to enter a decree of foreclosure as prayed in the bill.

The sole question in that case was as to the validity of the release executed by Peterson, as trustee, in April, 1921, which was about two years after the note and trust deed were executed and about three years before the maturity of the notes. The court said in *Kennell v. Herbert,* 342 Ill. 464, at page 468:

"The term (trustee) is a warning and a declaration to everyone who reads it that the person so named is

not the owner of the property to which it relates, that he holds it for the use and benefit of another, and that he has no right to deal with it except in accordance with the terms of the trust. *Owens v. Nagel,* 334 Ill. 96; *Henshaw v. State Bank,* 239 Ill. 515.'' The court, continuing on page 470, said: ''This abstract was sufficient notice to Kruse and his attorney that the trustee held title for some third party and that the notes were not due at that time. It was a warning that the authority of the trustee to release was limited and that a mere release without the surrender of the notes might not be sufficient. The attorney advised Herbert that he must secure the release but paid no attention to the question of the surrender of the notes and trust deed. Under these facts Kruse occupied no better position than Herbert, and the release was invalid as between Herbert and Kruse on the one hand and Kennell on the other. Kruse, as purchaser of the premises, had notice of the terms of the trust deed on record that the notes were not due and contained no pre-payment privilege, and that the trustee for that reason had no authority from such trust deed to receive payment of the notes and release the trust deed before maturity. Therefore, when he, Kruse, purchased the property and accepted the release without also requiring the surrender of the notes he did so at his peril.''

In support of the contention of the complainant Polish National Alliance that being without notice that the bonds had not been paid, it was entitled to rely upon the information which the public records vouchsafed, namely, that the bonds had been paid and that the trust deed under which defendants claim was no longer existent as a lien upon the property. The evidence discloses plaintiff made no investigation or inquiry beyond the terms of the release deed. They cite *Vogel v. Troy,* 232 Ill. 481, and *Ogle v. Turpin,* 102 Ill. 148, 152. In the latter case the court said at page 152:

"The ruling of this court has been, under our recording laws, that a purchaser or incumbrancer may rely on, and be protected by, a clear and regular title of record, unless affected by notice of secret adverse titles or liens. Such was the manifest object and purpose of this law, and it has ever been so enforced. The very object is, that all persons having any deed, mortgage, or other instrument in writing relating to or affecting the title to land, shall record it, or failing to do so, as against innocent subsequent purchasers or lienholders he must be precluded from asserting his claim. Runyan's release of the mortgage held against Allen was *prima facie* a satisfaction,—that the bank, in the absence of notice, or what is equivalent to notice, might act. . . . When the attorney of the bank found it thus satisfied, in this case, without circumstances to put him on inquiry, he had a right to rely on the record of satisfaction. As the record stood, it showed that Runyan was the owner of the title, free from incumbrance."

In considering cases submitted to them, of this general character, the Supreme Court of this State has laid down certain legal principles which govern in similar cases and some of these principles are applicable in part to the case at bar.

Referring again to the case of *Kennell v. Herbert,* 342 Ill. 464, at page 469 the court said:

"In equity, a release by the trustee, unauthorized by the terms of the trust deed or by the *cestui que trust,* will have no effect upon the trust deed as between the original parties or subsequent purchasers with notice. (*Connor v. Wahl,* 330 Ill. 136; *Vogel v. Troy,* 232 id. 481; *Havighorst v. Bowen,* 214 Ill. 90; *Lennartz v. Quilty,* 191 id. 174; *Ogle v. Turpin,* 102 id. 148.)"

Where the mortgagee, after having assigned the mortgage, acquires the equity of redemption and thereafter releases the mortgage, even though before matu-

rity, subsequent purchasers or lienors have a right to presume that the release was regular because of the merger of interests, in the absence of notice of the assignment. *Ogle v. Turpin,* 102 Ill. 148; *Havighorst v. Bowen,* 214 Ill. 90.

In the case of *Mann v. Jummel,* 183 Ill. 523, the court at page 532, said: "And we think the law is, that when the record shows that the release was executed after the indebtedness was past due, in the absence of all evidence of notice to the subsequent purchaser he will be protected."

Where a release is executed before maturity, and the notes secured by the mortgage or trust deed are payable on or before a certain date, subsequent purchasers or lienors have a right to presume that the makers exercised the option to pay before maturity, and that the release is regular. *Lennartz v. Quilty,* 191 Ill. 174.

Where a subsequent purchaser finds a release executed before maturity and demands to see and is shown the canceled notes described in the trust deed, bearing the genuine signature of the makers, such innocent purchaser has done all that the law required him to do, and will be protected, even though the notes exhibited to him are a duplicate set and even though the release is fraudulent. *Vogel v. Troy,* 232 Ill. 481.

In the instant case the property was conveyed to a trustee and our Supreme Court distinguishes between property in the name of a trustee and that of a conveyance to an individual as a mortgagee. In the case of *Owens v. Nabel,* 334 Ill. 96, the court at page 102 said: ". . . the word 'trustee,' when appended to the name of the payee of a bill or note, is sufficient to charge a purchaser with notice of restrictions and limitations imposed on the trustee's power to dispose of the instrument. The term is a warning and a declaration to everyone who reads it that the person so named is not the owner of the property to which it related,

that he holds it for the use and benefit of another, and that he has no right or power to sell or dispose of it except in accordance with the terms of the trust. . . . A trustee is one to whom property is legally committed in trust. . . ." *Henshaw v. State Bank,* 239 Ill. 515; *Chicago Title & Trust Co. v. Brugger,* 196 Ill. 96.

In the instant case the deed of conveyance from Lipinski and his wife to the Northern Trust and Savings Bank of Hammond, Indiana, as trustee, contained no specific clause authorizing it to release the trust deed at any time.

Did the subsequent mortgagee have notice? If facts appeared in the chain of title which would cause an ordinarily prudent man to investigate, he cannot close his eyes and refuse to go further than the release deed. As was said in *German-American Nat. Bank v. Martin,* 277 Ill. 629, at page 648: "Each case is governed by its own particular facts. While it is sometimes difficult to determine what acts are sufficient to put a party on inquiry, there has never been any departure from the rule controlling the question as it was first stated in this State in *Doyle v. Teas,* 4 Scam. 202. The rule as there announced is as follows: 'Where the court is satisfied that the subsequent purchaser acted in bad faith, and that he either had actual notice or might have had that notice had he not willfully or negligently shut his eyes against those lights which with proper observation would have led him to knowledge, he must suffer the consequences of his ignorance and be held to have had notice so as to taint this purchase with fraud in law. It is sufficient if the channels which would have led him to the truth were open before him, and his attention so directed that they would have been seen by a man of ordinary prudence and caution if he was liable to suffer the consequence of his ignorance. The law will not allow him to shut his eyes when his ignorance is to benefit himself at the expense of another, when he would have had them open and inquiring had the con-

sequences of his ignorance been detrimental to himself and advantageous to the other.' This rule has been consistently followed, repeatedly re-affirmed and never departed from. Among the cases in which it has been followed and applied are *Rupert v. Mark,* 15 Ill. 540; *Merrick v. Wallace,* 19 id. 486; *Morrison v. Kelly,* 22 id. 609; *Hatch v. Bigelow, supra; Harper v. Ely,* 56 Ill. 179; *Babcock v. Lisk,* 57 id. 327; *Chicago, Rock Island and Pacific Railroad Co. v. Kennedy,* 70 id. 350; *Bent v. Coleman,* 89 id. 364; *Morrison v. Miles,* 270 id. 41.''

In this case the pertinent facts which we think affect the question of notice are:

1st. The fact that the land was conveyed to a trustee, and the bonds issued by Lipinski under said trust deed were payable to the said bank as trustee, all of which would require an investigation as to its power in relation thereto.

2nd. The bonds which were issued were 12 in number and were for different amounts, making it probable that the bonds were issued for sale to different investors.

3rd. The bonds were all due three years after their date of issue and had no prepayment privileges.

4th. The release deed was executed October 10, 1928, less than 10 months from the date of issuance of said bonds and certified ''that the notes secured by said trust deed have been paid, canceled and surrendered.''

5th. It is a well known custom for investors in bonds to purchase them for the income which they would receive therefrom, according to the terms of the bond. Why should they surrender these bonds when they still had two years and two months to run at a good rate of interest?

6th. Some of the bonds might have been in the hands of minors, guardians for insane persons or executors (one of the defendants here is an executor) and administrators of estates whose power to dispose of

their ward's investments, would not be presumed but must appear affirmatively.

7th.  Looking at the release of the trust deed executed by the trustee and the clause certifying that the bonds had been paid, canceled and surrendered, a reasonably prudent man would inquire who paid the bonds?  By whom were they canceled and to whom were they surrendered?  And, if paid by the signers of the bonds it would present the unusual spectacle of parties having funds to pay for their loan before maturity and, yet within a week, are in the market to make another loan on the same property.

All of these questions could have been answered by the Polish National Alliance, requiring that the paid, canceled and surrendered bonds be produced for their inspection.

It is further suggested by the plaintiff that they had a right to rely on a paragraph in the trust deed which would justify them in assuming that the bondholders had been paid before maturity.  That paragraph is as follows:

"Said mortgagors agree to keep all buildings upon said premises insured against loss or damage by fire and tornado for the full insurable value in some responsible Insurance Company, with mortgage clause running to said trustee, attached, and to deposit said policy with said trustee and to keep the same insured as aforesaid as long as said indebtedness, or any part thereof remains unpaid; also to pay all taxes, special assessments, mechanic's, laborer's or material men's liens, which may be or may become a lien upon the real estate described; also to pay any prior liens or encumbrances which may at the time this mortgage is executed be a lien upon said premises, and to buy up outstanding claims lessening the legal or equitable title to said premises.

"Should said mortgagor neglect or fail to make any of said payments said bonds shall, at the election of the holders thereof, or said trustee, thereupon, become

due and collectible." A reading of the language just quoted discloses that it does not refer to the subject of prepayment.

It is suggested by plaintiff that some notice should have been placed of record in the recorder's office as to the ownership of the bonds by the owners thereof, either by placing of record an assignment of the trust deed or of the bonds. Plaintiffs quote in support of their position the specially concurring opinion written by Mr. Justice Dickey in the case of *Ogle v. Turpin,* 102 Ill. 148, at page 156, wherein it is stated: "When a man buys notes secured by mortgage he becomes thereby the equitable assignee of the mortgage, and acquires an equitable interest in the mortgaged lands. If he wishes to protect that interest against subsequent purchasers, he may do so by taking a written assignment of the mortgage, and placing that assignment upon record. Possibly a record of the assignment of the note would be sufficient."

The difficulty with such contention in this case is that there is no provision in the statute which makes the recording of a note or bond notice to anyone, and as the bonds in this case were payable to bearer and did not contain the name of the real owner such a recording would be futile. In addition to this there is no provision for the recording of a trust deed which would give notice to the world who the real beneficiaries are. In this case, the conveyance being a trust deed securing many bonds held by different people, the trustee had no power to make an assignment of the trust deed to any one or to divest himself of his duties thereunder. If the owner of a bond, secured by a trust deed, attempted to place the bond on record in the recorder's office, such action by him would not cause said bond to appear in the chain of title as there is no legal description set forth in said bond and it merely contains the legend, "secured by real estate situated in Calumet City, Cook County, Illinois," without giving any legal description

of the real estate. Consequently, such a recording would not carry with it any notice or be any protection to subsequent purchasers.

We believe from all the facts and circumstances surrounding this transaction and the law applicable thereto, there was sufficient appearing to put a prospective purchaser on inquiry and cause an ordinarily prudent man to investigate the situation further than the facts disclosed by the trust and release deeds. Such an inquiry or investigation would have led him at once to the truth, namely, that the said bonds had not been paid, canceled or surrendered and thus would have avoided the present difficulty of the Polish National Alliance. In failing to make this investigation or inquiry as required by the laws of this State, which is tantamount to closing its eyes to what it could have discovered, the Polish National Alliance placed itself in the position of having had the equivalent of actual notice of the rights of the defendant bondholders under the trust deed of January 17, 1928. Consequently, we believe the trial court was correct in finding:

First, that the Polish National Alliance as subrogees of Mary Czaszewicz, was entitled to a first lien on the premises herein involved to the extent of $10,000, and interest thereon as shown by the decree;

Second, that the bondholders were entitled to a second lien as their interests were proven in the aggregate sum of $10,000 distributed among the various owners of said bonds, together with the interest thereon as set forth in the decree; and

Third, that the Polish National Alliance is entitled to a subsequent or third lien to the extent of $7,000, with interest as shown by the decree.

For the reasons herein given the decree of the circuit court is hereby affirmed.

*Decree affirmed.*

HEBEL and HALL, JJ., concur.