HULDA VOGEL, Appellant, *vs.* ERNEST G. TROY *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. MORTGAGES—*trustee named in deed of trust has power to release lien.* A trustee named in a deed of trust securing a note endorsed in blank has power, as to third persons, to release the lien, although the note is not due and the legal holder has not consented to such release, which is in violation of the trustee's obligation; but in equity the release has no effect as between the original parties or purchasers with notice.

2. SAME—*when purchaser will be protected by trustee's release of deed.* Where a trust deed securing a note endorsed in blank is left with the trustee by the legal holder of the note without anything being of record to show her ownership, if a prospective purchaser of the property finds in the trustee's hands a note substantially corresponding to the one described in the deed and which is represented by the trustee to be the original note now owned by him, such purchaser is justified in paying the note to the trustee upon his releasing the trust deed, even though she had heard that the note was owned by a person other than the trustee, which information was not substantiated by the record or abstract of title.

3. SAME—*what does not charge purchaser of property with notice.* Where the trustee named in a deed of trust securing a note payable to the makers' order and endorsed in blank, obtains from the makers a duplicate note upon his false representation that the original note had been destroyed, the facts that the duplicate note is signed by the wives of two of the makers, which was not the case with the original note, and that some of the interest notes are mis-dated, are not notice to a prospective purchaser that the note is not the original one, as was represented by the trustee.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

GEORGE A. McCORKLE, and ELDRIDGE & ROSE, for appellant.

CHARLES L. BARTLETT, and SHERMAN C. SPITZER, for appellee Elizabeth Greenwood Lighthall.

232—31

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Cook county by the appellant, Hulda Vogel, against the appellees, to set aside a release made by John Pfeiffer of a certain trust deed executed by Emeline Troy and her two sons and their wives to said John Pfeiffer to secure the payment of a promissory note for the sum of $2000, bearing date November 16, 1901, of which Hulda Vogel was the owner, and to foreclose said trust deed. Emeline Troy, Harry L. Troy, Effie Troy, Ernest G. Troy, Nellie Troy, and John Pfeiffer, individually and as trustee, and A. J. Hanlon, as successor in trust, and Elizabeth G. Lighthall, were made parties defendant. The defendants, with the exception of Pfeiffer and Hanlon, who were defaulted, answered the bill, and replications were filed, and the case was referred to the master to take the evidence and report his conclusions. The master reported the complainant was entitled to the relief prayed for, and recommended that a decree be entered in accordance with the prayer of the bill. The circuit court sustained exceptions to the master's report and dismissed the bill for want of equity, and the decree of the circuit court having been affirmed by the Branch Appellate Court for the First District, a further appeal has been prosecuted to this court.

It appears from the record that Emeline Troy and her sons, Harry L. and Ernest G., were the owners of certain premises situated in the city of Chicago which were subject to a mortgage for the sum of $1000 held by Anna M. Blodgett; that on November 16, 1901, the said Emeline, Harry L. and Ernest G. Troy, through John Pfeiffer, borrowed of Hulda Vogel the sum of $2000, and to secure the payment of the same made their principal note for the sum of $2000, due and payable five years after date, with six per cent interest, payable semi-annually, which interest was

represented by ten coupon interest notes for the sum of $60, each of said notes bearing date November 16, 1901, which were made payable to the order of themselves and by them endorsed, and which notes were secured by a trust deed upon said premises bearing date November 16, 1901, and which was recorded on January 14, 1903. The notes and trust deed were delivered to Pfeiffer, who delivered the notes to Hulda Vogel and retained the trust deed. After the execution of the trust deed Emeline Troy conveyed her interest in the premises to her sons. The interest upon the $2000 loan was paid to Hulda Vogel by the Troys through John Pfeiffer, who delivered to them the interest notes as the interest was paid. On June 2, 1903, Elizabeth G. Lighthall purchased said premises of the Troys for the sum of $5000, and on June 8, 1903, Harry L. and Ernest G. Troy and their wives executed a warranty deed to Mrs. Lighthall conveying to her said premises, and delivered said deed and the deed from their mother to them, which had not been recorded, to Pfeiffer. The encumbrances upon the property were to be paid out of the purchase money and Mrs. Lighthall was to have the premises conveyed to her free of all encumbrances. At the time said deeds were delivered to Pfeiffer he represented to the Troys that the $2000 note and interest notes secured by said trust deed had been lost or mislaid, and at his suggestion new notes were executed by the Troys which corresponded substantially to the old notes, which new notes were delivered to Pfeiffer. The original $2000 note and interest notes were then in the possession of Hulda Vogel, who was in Europe. Pfeiffer then recorded the deeds from Emeline Troy to Harry L. and Ernest G. Troy, and from Harry L. and Ernest G. Troy and their wives to Mrs. Lighthall, also a release deed executed by himself to the Troys releasing the $2000 trust deed, and the abstract of title was brought down to show the title in Mrs. Lighthall, free and clear of all encumbrances other than the $1000 mortgage to Mrs. Blodgett. The pur-

chase money had been deposited by Mrs. Lighthall with the Chicago Title and Trust Company, and the trust company, upon the written order of Mrs. Lighthall, paid the same to the parties who were supposed to be interested therein, the sum of $2060 being paid to Pfeiffer.

At the time the money was paid, and prior thereto, Pfeiffer represented to the agent of Mrs. Lighthall, who represented her in closing the deal, and to the officer of the trust company who distributed the funds, that he was the owner of said $2000 note and the accrued interest thereon. Pfeiffer had no interest in said $2000 note and did not account to Hulda Vogel for the money he received from the trust company at the time he canceled and surrendered said spurious notes and released said trust deed, but converted the same to his own use. The question, therefore, to be decided in this case is, did Mrs. Lighthall acquire title to said premises discharged of the lien of said $2000 trust deed? If she did, the decree of the circuit court is correct; if she did not, it is wrong.

The law is well settled in this State that the trustee in a trust deed of the character of the one in question has the power, as to third parties, to release the lien created thereby so as to re-vest the title in the grantor, even though he does so without the consent of the holder of the indebtedness which the trust deed was given to secure and in violation of the obligations of his trust; (*Mann* v. *Jummel,* 183 Ill. 523;) and such release may be made even though the indebtedness secured by the trust deed is not due at the time the release is executed. (*Ogle* v. *Turpin,* 102 Ill. 148.) In equity, however, a release unauthorized by the terms of the trust deed or by the consent of the *cestui que trust* will have no effect upon the trust deed as between the original parties or as to subsequent purchasers with notice; (*Ogle* v. *Turpin, supra; Mann* v. *Jummel, supra; Lennartz* v. *Quilty,* 191 Ill. 174; *Havighorst* v. *Bowen,* 214 id. 90; *Connecticut General Life Ins. Co.* v. *Eldredge,* 102 U. S.

545;) and such is conceded to be the law by counsel for appellant. It is, however, contended that Mrs. Lighthall had notice that Hulda Vogel was the owner of the $2000 note and interest notes secured by the trust deed made to Pfeiffer, or notice of facts which should have put her upon inquiry, which, if followed up, would have disclosed to her that Pfeiffer was not the owner of the indebtedness secured by said trust deed and that said indebtedness had not been paid and that Pfeiffer had no right to release said trust deed, and two things are principally relied upon to bring notice home to Mrs. Lighthall that Pfeiffer was not the owner of said indebtedness and that he did not have the right to release said trust deed:

*First*—A few days before Mrs. Lighthall purchased said premises of the Troys she went to the premises to look them over. At that time Mrs. Troy told her there were two encumbrances upon the property,—one for $1000 and one for $2000; that one was held by a Mrs. Blodgett and one by Mrs. Vogel, but she did not state which encumbrance was held by Mrs. Vogel. We think under some circumstances the information which Mrs. Lighthall received at that time would have been sufficient to have required her to take notice of the rights of Hulda Vogel, but do not think she was so required under the circumstances disclosed by this record. The $2000 note and interest notes were payable to the order of the Troys and by them endorsed in blank, and the trust deed ran to John Pfeiffer. The abstract of title of said premises furnished Mrs. Lighthall by the Troys in no way disclosed that Hulda Vogel had any interest in the indebtedness described by said trust deed. The $2000 note and interest notes were transferable by delivery. Pfeiffer had in his possession the original trust deed and a $2000 note and interest notes, which bore the genuine signatures of the Troys and substantially corresponded with the notes described in the $2000 trust deed. Mrs. Lighthall did not rely upon herself to close up the

deal, but relied upon one Lang, an experienced real estate man, and the Chicago Title and Trust Company, which company issued to her a guaranty policy at the time said company paid the amount of said notes to Pfeiffer. True, if she had imparted to Lang or to the trust company the information she received from Mrs. Troy that one of the encumbrances was held by Hulda Vogel it might have been discovered that Pfeiffer had no right to release the trust deed; but this is doubtful. Mrs. Lighthall or her agents were only required to do what a reasonably prudent person would have done under like circumstances to ascertain whether there was any infirmity in the release of Pfeiffer. The indebtedness of Hulda Vogel being transferable by delivery, might readily, in the due course of business, have reached the hands of Pfeiffer at the time that he canceled the notes and surrendered them to the Troys and released the trust deed, subsequent to the time Mrs. Lighthall was informed that Hulda Vogel was interested in one of the encumbrances upon said real estate. The Troys, who were present and who were interested in having the right notes paid and canceled, knew that the notes which Pfeiffer marked paid and surrendered were understood by Mrs. Lighthall, Mr. Lang and the representative of the trust company to be the notes which were secured by the trust deed, and Pfeiffer had in his possession the original trust deed, which he released. Hulda Vogel selected John Pfeiffer as her trustee. She left in his possession the original trust deed and failed in any way to place anything of record which showed that she had any interest in the indebtedness secured by said trust deed, and it seems apparent that Mrs. Lighthall did all she reasonably could do to protect herself from the secret lien of Hulda Vogel at the time she purchased said property. The notice of Hulda Vogel's rights, so far as notice thereof was conveyed to Mrs. Lighthall, was conveyed to her by a person who at the time the notice was given had no interest in the property, and the notice was

therefore merely in the nature of a rumor as to the condition of the title, which was apparently dispelled when an abstract of title to the property was furnished and upon examination it did not appear therefrom that Hulda Vogel had any interest in said trust deed, and Pfeiffer appeared, at the time the deal was closed, with the original trust deed, and what apparently was the original $2000 note and interest notes, in his possession and claimed to own them. The loss caused by the misconduct of John Pfeiffer must be borne either by Hulda Vogel or by Mrs. Lighthall, and we think it clear Mrs. Lighthall acted in the utmost good faith and did all that a reasonably prudent person could do to secure a perfect title to said premises at the time she purchased the same, and that her rights are superior to those of Hulda Vogel and should be protected.

*Second*—It is urged that the notes did not correspond with the notes described in the trust deed. There was a difference between the two series of notes in this: that the last series was signed by the wives of Harry L. and Ernest G. Troy, which was not the case with the first series, and three of the interest notes were not correctly dated. The notes presented by Pfeiffer corresponded substantially with the notes described in the trust deed. They were presented by Pfeiffer with the original trust deed and as the notes described in that trust deed. · Mrs. Lighthall and her agents, who were experienced business men, acted upon the theory that they were the original notes of the Troys, and in so doing did what we think a reasonably prudent business man would have ordinarily done under the same circumstances. The scheme of Pfeiffer was one well calculated to deceive, and we think Mrs. Lighthall took every precaution to protect her rights. In *Lennartz* v. *Quilty, supra,* on page 180, it is said: "The recording laws are designed to afford protection to parties acting in good faith and relying upon them, and in the absence of any notice or ground of suspicion it is not the duty of a purchaser to obtain an

admission of payment from the holder of a note secured by a trust deed regularly released of record."

It amply appears from this record that Mrs. Lighthall acted in entire good faith and paid her money relying upon the record of the release made ·by Pfeiffer, which showed the payment of the indebtedness and discharge of the lien.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*