# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Bank of New York v. Langman, 2013 IL App (2d) 120609**

---

| | |
|---|---|
| Appellate Court Caption | THE BANK OF NEW YORK, as Trustee for the Holders of EQCC Asset-Backed Certificates, Series 2001-2, Plaintiff-Appellee, v. VINCENT J. LANGMAN; ABDUL REHMAN HAMIDANI; WELLS FARGO FINANCIAL ILLINOIS, INC., f/k/a Northwest Financial Illinois, Inc.; TCF NATIONAL BANK; JOYCE HAMIDANI; UNKNOWN OWNERS AND NONRECORD CLAIMANTS, Defendants (JP Morgan Chase Bank, National Association, as the Purchaser of the Loans and Other Assets of Washington Mutual Bank, f/k/a Washington Mutual Bank, FA, from the Federal Deposit Insurance Corporation, Intervenor-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-0609 |
| Filed | March 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action with a convoluted procedural history arising from a situation involving a property subjected to multiple mortgages, assignments of mortgages, foreclosures, and a forged release of a mortgage, plaintiff's filing of a notice of foreclosure *lis pendens* placed the subsequent intervenors on notice of the problems created by the forged release, and the appellate court upheld the trial court's finding that plaintiff's mortgage interest in the property was superior. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 06-CH-943; the Hon. Leonard J. Wojtecki, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

William J. Holloway and Kristy K. Singler, both of King Holloway LLC,
of Chicago, for appellant.

Anna-Katrina S. Christakis and Scott G. Weber, both of Grady Pilgrim
Christakis Bell LLP, of Chicago, for appellee.

Panel             PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Jorgensen and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1       In two separate cases proceeding concurrently against the same property, the circuit court of Kane County entered orders of foreclosure of first liens in favor of two different mortgagees. In the action at issue here, the trial court granted plaintiff, the Bank of New York, as trustee for the holders of EQCC Asset-Backed Certificates, Series 2001-2 (BONY), an order of foreclosure (BONY foreclosure action). In a separate action, the trial court granted intervenor, JP Morgan Chase Bank, National Association, as the purchaser of the loans and other assets of Washington Mutual Bank, f/k/a Washington Mutual Bank, FA, from the Federal Deposit Insurance Corporation (JPM), an order of foreclosure (JPM foreclosure action). When JPM learned of the conflicting foreclosure order, it intervened in the BONY foreclosure action, claiming that its mortgage had priority. The trial court found that BONY's mortgage was superior. JPM claims on appeal that its mortgage has priority due to proper reliance on a forged release of BONY's mortgage. We disagree and hold that the recorded pending BONY foreclosure action gave JPM notice, actual or constructive, that BONY's mortgage was superior. We affirm.

¶ 2                                      FACTS

¶ 3       Although this case has a fairly convoluted procedural history, we summarize the facts as simply as possible.[1] In 1999, GN Mortgage Corporation (GN) extended to defendant Vincent J. Langman a loan secured by a mortgage on the residential property located at 2311 Collins Court, Batavia, Illinois (the property). On August 16, 2000, a forged release of the GN mortgage was recorded; however, Langman continued to pay the loan to GN for over two years.

¶ 4       Meanwhile, on December 4, 2001, Langman obtained a mortgage on the property from

---

[1]To simplify the facts, we have appended a chronological flow chart.

Matrix Financial Services, Inc. (Matrix). Langman then defaulted on the Matrix loan. On December 9, 2002, Deutsche Bank, as assignee, commenced a foreclosure of the Matrix mortgage, but it did not name GN or BONY (which had been assigned the GN mortgage) as a party to the foreclosure action. A judgment of foreclosure was entered against Langman, and Deutsche Bank sold the property to defendants Abdul Rehman Hamidani and Joyce Hamidani on January 31, 2005. The Hamidanis then mortgaged the property to defendant TCF National Bank (TCF).

¶ 5　　During the intervening time, Langman, who had continued to pay the GN debt in spite of the recorded forged release, defaulted on the GN mortgage in February 2003. In late March 2006, BONY learned through its agent, Select Portfolio Servicing, of the forged release of the GN mortgage. On June 29, 2006, BONY obtained an affidavit from GN confirming that the release was forged. BONY also learned that Langman had continued to pay monthly installments after the GN release was recorded, until January 1, 2003. BONY filed its complaint for foreclosure on July 10, 2006, and recorded a notice of foreclosure *lis pendens* on July 13, 2006.

¶ 6　　Shortly thereafter, on August 1, 2006, the Hamidanis entered into a mortgage and a revolving line of credit with Washington Mutual Bank (WaMu). The Hamidanis defaulted and WaMu filed a foreclosure action on March 10, 2008. According to JPM, it acquired the Hamidani's mortgage on September 25, 2008, after WaMu was placed in receivership. The trial court entered an order of foreclosure and sale in favor of JPM on June 6, 2008.

¶ 7　　Extensive litigation ensued in the BONY foreclosure proceeding to determine the state of title to the property. On July 24, 2008, the trial court granted summary judgment in favor of BONY, holding, in part, that the purported release of GN's mortgage was a forgery and that WaMu was not a necessary party to the foreclosure proceeding due to the recording of BONY's notice of foreclosure *lis pendens*. On December 19, 2008, the court entered a judgment of foreclosure and sale with the redemption period to expire on March 19, 2009. Neither the BONY foreclosure action nor the notice of foreclosure contained any mention of the forged release. At no time did GN or BONY record an affidavit of correction from GN or any other document confirming that the release of its mortgage had been forged.

¶ 8　　When JPM heard of the BONY foreclosure action, it filed a petition to intervene on March 12, 2009, to obtain a ruling as to which mortgage had priority on the property. JPM argued that it should be allowed to intervene because its mortgage on the property created an enforceable interest in the property and a judgment of foreclosure and sale had been entered in its favor six months prior to the judgment of foreclosure and sale in the BONY foreclosure action. The trial court permitted JPM to intervene. JPM then filed a motion to determine mortgage priority, requesting an order to declare its mortgage, dated August 1, 2006, as prior and superior to BONY's mortgage. The trial court denied the motion and found that there was no just reason to delay enforcement or appeal.

¶ 9　　We dismissed on the ground that there had been no final order adjudicating priority between the BONY and the JPM mortgages. *Bank of New York v. Langman*, 2011 IL App (2d) 101118-U.

¶ 10　　Subsequently, the trial court found that the BONY mortgage had priority over the JPM

mortgage. Essentially, the trial court concluded that JPM should have performed a reasonable inquiry, which would have revealed BONY's adverse interest. JPM timely filed a notice of appeal.

¶ 11 On appeal, JPM contends that (1) the Hamidanis, as *bona fide* purchasers for value, properly relied on the forged release and took title free of the GN mortgage when they mortgaged the property to WaMu; (2) alternatively, BONY is equitably estopped from asserting its lien interest, because it failed to record an affidavit of correction once it discovered the forged release; and (3) the trial court's reasoning was faulty.

¶ 12 ANALYSIS

¶ 13 Standard of Review

¶ 14 At issue here are the rules of priority under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2010)), as applied to BONY's lien and JPM's lien. The priority of parties' respective security interests is a question of law. *Travelers Insurance Co. v. First National Bank of Blue Island*, 250 Ill. App. 3d 641, 644-45 (1993). Our review of a question of law is *de novo*. *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 891 (2010) (citing *Du Page County Board of Review v. Department of Revenue*, 339 Ill. App. 3d 230, 233 (2003)).

¶ 15 *Bona Fide* Purchasers

¶ 16 JPM contends that the Hamidanis, as *bona fide* purchasers for value, properly relied on the recorded release and took title free of the GN mortgage. JPM asserts that Matrix had no reason to suspect that the release of the GN mortgage was forged, and therefore each party in the chain of title received title unencumbered by the GN mortgage. Thus, JPM claims that, before the Hamidanis mortgaged the property to WaMu, title passed free and clear of the GN mortgage.

¶ 17 BONY raises several arguments in response. BONY first contends that the *bona fide* purchaser doctrine does not apply to Deutsche Bank, WaMu, or JPM because the release was forged. Second, BONY argues that the *bona fide* purchaser doctrine does not apply to a patently invalid release, as the release here is because it is filled with typographical and grammatical errors, does not contain a corporate seal of authenticity, does not certify or acknowledge satisfaction of the debt secured by the property, and does not purport to release GN's interest in the property. Finally, BONY argues that, even if the *bona fide* purchaser doctrine applies, Deutsche Bank, WaMu, and JPM are not *bona fide* purchasers, as they had notice, actual or constructive, of BONY's adverse interest.

¶ 18 BONY relies on *Oswald v. Newbanks*, 336 Ill. 490, 491 (1929), and *Osby v. Reynolds*, 260 Ill. 576, 583 (1913), to support its first argument, that the *bona fide* purchaser doctrine does not apply because the release was forged. However, these cases concern forged deeds or deeds delivered without authorization, not forged releases. Furthermore, the *bona fide* purchaser doctrine does apply to forged releases under Illinois law. See *Lennartz v. Quilty*, 191 Ill. 174, 179-80 (1901); *Ogle v. Turpin*, 102 Ill. 148 (1881).

¶ 19    We disagree with BONY's next contention, regarding the patent invalidity of the release. The release itself is titled "Release of Mortgage or Trust Deed" and is referred to as a "release" in bold print at the bottom. Additionally, JPM notes that the document provides that GN "does hereby remise, convey and quit-claim onto" Langman all "the right, title interest, and claim" in the property. Because the document quitclaims all title interest to Langman, it clearly purports to extinguish the GN debt, and Matrix and the remaining mortgagees in the chain of title had reason to believe that the GN mortgage had been released. See *In re Estate of Ozier*, 225 Ill. App. 3d 33, 36 (1992) (vesting in party of legal title at same time as ownership of mortgage indebtedness secured by mortgage upon title results in merger in him and extinguishes debt).

¶ 20    As to BONY's last argument, that Deutsche Bank, WaMu, and JPM are not *bona fide* purchasers, as they had notice, actual or constructive, of BONY's adverse interest, JPM responds that the release of the GN note before it was due did not give rise to suspicion of the authenticity of the release. See *Polish National Alliance of the United States of North America v. Lipinski*, 288 Ill. App. 234, 244 (1937). JPM raises its original contention that, in the absence of a reason to suspect the authenticity of the release, a subsequent *bona fide* purchaser for value takes title free of the apparently released mortgage, and therefore, as *bona fide* purchasers for value of the property, the Hamidanis properly relied on the release and took title unencumbered by the GN mortgage. JPM cites *Vogel v. Troy*, 232 Ill. 481, 487-88 (1908), *Lennartz*, 191 Ill. at 179-80, and *Ogle*, 102 Ill. 148, in support of its argument.

¶ 21    JPM, *Vogel*, *Lennartz*, and *Ogle* stand for the proposition that the unauthorized release of a debt does not discharge the debt as between the original parties; but subsequent purchasers, without notice or anything to put them on inquiry of an adverse title or lien, may rely on the recorded release and will take priority of title over the original lienholder. Had this been a title dispute between the Hamidanis and BONY or a lien priority dispute between Matrix and BONY, the proposition from the cases relied upon by JPM would not favor BONY. The difference here is that this case involves a lien priority dispute between BONY and JPM, as assignee of WaMu.

¶ 22    Nonetheless, the cases cited by JPM clarify two points. First, BONY's lien would take priority over any subsequent purchaser with notice or anything to put that purchaser on inquiry. See, *e.g.*, *Ogle*, 102 Ill. 148. In this case, BONY recorded its notice of foreclosure on July 13, 2006. WaMu subsequently extended a mortgage to the Hamidanis on August 1, 2006. Clearly, WaMu was on notice of BONY's interest in the property *before* WaMu obtained its mortgage. "If facts appear in the chain of title which would cause an ordinary prudent man to investigate, he cannot close his eyes and refuse to go further than the release deed." *Polish National Alliance*, 288 Ill. App. at 245. WaMu closed its eyes and did not investigate the basis of BONY's foreclosure action. Furthermore, every proceeding involving real property shall, from the time of the filing of the *lis pendens*, be constructive notice to every person subsequently acquiring an interest in or a lien on the property. See 735 ILCS 5/2-1901 (West 2010). Thus, WaMu was on constructive notice of the lien as well.

¶ 23    Second, the Deutsche Bank foreclosure action did not completely extinguish the BONY mortgage. *Lennartz* and *Ogle* hold that, where *any subsequent purchaser* or mortgagee takes its title or interest with notice of a breach of trust, the original lienholder's rights will be

superior. *Lennartz*, 191 Ill. at 179; *Ogle*, 102 Ill. 148; see also 735 ILCS 5/2-1901 (West 2010) (every such person acquiring an interest or lien on property, not in possession of property and whose interest or lien is not shown of record at time of filing such notice, shall, for purposes of this section, be deemed a subsequent purchaser).

¶ 24 We also note that Deutsche Bank's mere filing of a foreclosure action and naming "Unknown Owners" did not extinguish BONY's lien interest as against subsequent lienholders with constructive notice of the adverse lien. See, *e.g.*, *React Financial v. Long*, 366 Ill. App. 3d 231, 234-36 (2006) (junior mortgagee not bound by senior mortgagee foreclosure if not made a party).

¶ 25                                    Equitable Estoppel

¶ 26 Under equitable estoppel, where a person, by his or her statements or conduct, leads a party to do something that said party would not have done but for such statements or conduct, that person will not be allowed to deny his or her words or actions to the detriment of the other party. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). The party claiming the benefit of estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others. *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1042 (2007).

¶ 27 JPM contends that BONY is equitably estopped from asserting its lien interest, because it failed to record an affidavit of correction within a reasonable time once BONY's servicer, Select Portfolio Servicing, learned of the forged release in March 2006, or once BONY obtained confirmation in June 2006. JPM claims that WaMu relied on the recorded release and was misled by BONY's silence into extending the mortgage. BONY contends that WaMu's reliance on the recorded release was unreasonable in light of BONY's recorded notice of foreclosure. We agree with BONY.

¶ 28 Initially, we observe that no Illinois case requires a property owner to record an affidavit of correction in order to assert title. BONY's notice of foreclosure, which was recorded prior to WaMu's mortgage and JPM's assumption of same, put WaMu on notice that BONY claimed an interest in the property, despite any purported "release" in the chain of title. See 735 ILCS 5/2-1901, 15-1503 (West 2010). After a party records a *lis pendens*, all subsequent purchasers and lien claimants are bound and a plaintiff need not seek separate equitable relief. *Oxequip Health Industries, Inc. v. Canalmar, Inc.*, 94 Ill. App. 3d 955, 958 (1981). "[F]rom the time the notice of *lis pendens* is filed, it serves as constructive notice to every person subsequently acquiring an interest in the property, and *** the person acquiring the subsequent interest shall be bound by the proceedings to the same extent and in the same manner as if he were a party." *Security Savings & Loan Ass'n v. Hofmann*, 181 Ill. App. 3d 419, 422 (1989). BONY filed its complaint for foreclosure on July 10, 2006, and recorded a notice of foreclosure *lis pendens* on July 13, 2006. On August 1, 2006, two weeks *after* BONY had recorded its notice of foreclosure, the Hamidanis entered into their mortgage with WaMu. When BONY recorded its notice of foreclosure on July 13, 2006, WaMu was placed on constructive notice of BONY's adverse interest. Thus, WaMu, and by extension JPM, could not reasonably claim that it relied on the forged release.

¶ 29    Additionally, the cases that JPM cites clearly hold that equitable estoppel is not available to a party that has notice of any adverse title or error in the record. *Vogel*, 232 Ill. at 487-88; *Lennartz*, 191 Ill. at 179-80; *Ogle*, 102 Ill. 148. In *Polish National Alliance*, the court found that the plaintiff could not rely on the defective release and should have inquired further concerning any adverse interests. *Polish National Alliance*, 288 Ill. App. at 245. If BONY had recorded nothing, subsequent purchasers would have had no reason to inquire about its unknown lien. By recording its *lis pendens* foreclosure, BONY took the necessary steps to place subsequent purchasers on notice. The notice was a ground for suspicion, which WaMu ignored to its detriment.

¶ 30                          Trial Court's Reasoning

¶ 31    JPM last argues that the trial court's reasoning was faulty. JPM believes that Langman was capable of taking out more than one mortgage on the property and that the procedure outlined by the trial court to determine any adverse interests could prove burdensome. We need not analyze the trial court's reasoning, as our review is *de novo*. Furthermore, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis, and even if the trial court's reasoning was incorrect. *Water Applications & Systems Corp. v. Bituminous Casualty Corp.*, 2013 IL App (1st) 120983, ¶ 33.

¶ 32                              CONCLUSION

¶ 33    For the preceding reasons, we affirm the judgment of the circuit court of Kane County.

¶ 34    Affirmed.



GN mortgage to Langman on Collins Court property- recorded July 21, 1999

Matrix mortgage to Langman- December 4, 2001

Matrix assigns mortgage to Deutsche Bank

Deutsche Bank files for foreclosure- December 9, 2002 (does not name BONY/GN)

Deutsche Bank sells Collins Court property to Hamidanis

Hamidanis refinances with WaMu- August 1 and 22, 2006

WaMu files for foreclosure- March 10, 2008

WaMu assigns mortgage to JPM

Circuit court grants foreclosure to JPM, orders sale- July 6, 2008

Forged release- recorded August 16, 2000

Langman continues to pay GN for two years following recorded release- defaults

GN assigns mortgage to BONY

Affidavit reveals forgery- June 29, 2006

BONY files for foreclosure-July 10, 2006

BONY files *lis pendens* July 13, 2006

Circuit court grants foreclosure to BONY, orders sale- December 19, 2008

JPM files petition to intervene in BONY foreclosure action- March 12, 2009

Circuit court finds BONY's mortgage superior over JPM's mortgage