# Illinois Official Reports

## Appellate Court

---

### *M&T Bank v. Mallinckrodt*, 2015 IL App (2d) 141233

---

| | |
|---|---|
| Appellate Court Caption | M AND T BANK, Plaintiff-Appellant, v. UDO VON MALLINCKRODT, a/k/a Udo Mallinckrodt, a/k/a Udo V. Mallinckrodt; JP MORGAN CHASE BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Nominee for First Security Mortgage; UNKNOWN HEIRS AND LEGATEES OF UDO VON MALLINCKRODT, if any; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants.–U.S. BANK NATIONAL ASSOCIATION, Plaintiff-Appellee, v. UDO VON MALLINCKRODT, a/k/a Udo V. Mallinckrodt; JP MORGAN CHASE BANK, N.A.; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants. |
| District & No. | Second District<br>Docket No. 2-14-1233 |
| Filed | September 30, 2015 |
| Rehearing denied | November 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 10-CH-6194, 10-CH-6339; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Peter M. King and William J. Holloway, both of King Holloway Lipinski LLC, of Chicago, for appellant.<br><br>Russell R. Custer, Jr., and Edward R. Sherman, both of Lillig & Thorsness, Ltd., of Oak Brook, for appellee. |

Panel

JUSTICE SPENCE delivered the judgment of the court, with opinion. Presiding Justice Schostok and Justice Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal involves a lien priority dispute in mortgage foreclosure proceedings on a residential property. Plaintiff-appellant, M&T Bank, appeals from the trial court's grant of partial summary judgment in favor of plaintiff-appellee, U.S. Bank National Association (U.S. Bank). The trial court ruled that U.S. Bank's mortgage had priority over M&T Bank's mortgage. We reverse and remand.

¶ 2                              I. BACKGROUND

¶ 3    We summarize the background of this case according to documents in the record, recognizing that the case is ongoing and that some facts may later be disputed by the property owner or others.

¶ 4    Udo Von Mallinckrodt owns residential property commonly known as 23W066 Kings Court in Glen Ellyn. Mallinckrodt is also the president of First Security Mortgage, Inc. (First Security).

¶ 5    On August 12, 2005, Mallinckrodt executed a $348,000 mortgage against the property in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as the mortgagee for the lender, First Security. This mortgage was recorded on August 19, 2005, with the Du Page County recorder of deeds. At some point that is not clear from the record, the mortgage was assigned from MERS to M&T Bank.

¶ 6    On July 26, 2007, Mallinckrodt executed a second mortgage against the property, this time for $350,000. The mortgage was purportedly to refinance the property. MERS again acted as the mortgagee for the same lender, First Security, and the mortgage was assigned to U.S. Bank. At the time of closing, the title commitment revealed the prior $348,000 mortgage and another $147,000 mortgage to JP Morgan Chase. The latter mortgage was subject to a subordination agreement. Mallinckrodt provided a payoff statement for the $348,000 mortgage, stating that funds to pay off that mortgage should be wired to an account at MB Financial Bank.

¶ 7    First American Title Insurance Company (FATIC) acted as the agent for U.S. Bank at the closing. On July 31, 2007, it wired $345,566.06 from U.S. Bank to the MB Financial Bank account listed in the payoff statement, which was intended to satisfy the $348,000 mortgage. On August 21, 2007, FATIC recorded a certificate of release for the $348,000 mortgage. The U.S. Bank mortgage was recorded the same day.

¶ 8    Although U.S. Bank initially took the position in the trial court that M&T Bank received the funds to satisfy its mortgage, the parties now agree that the payoff statement turned out to be fraudulent. The money intended to fulfill the $348,000 mortgage was sent to an account

for Belvis Mortgage Services at MB Financial Bank, of which Mallinckrodt was an authorized signatory. The money was then transferred to an account at Fifth Third Bank of which Mallinckrodt was also a signatory, and he disbursed the funds for his own purposes; Mallinckrodt did not use the money to pay off the $348,000 mortgage. Mallinckrodt maintained the monthly payments for both mortgages until about July 2010.

¶ 9       On October 28, 2010, U.S. Bank filed an action to foreclose the $350,000 mortgage. Shortly afterward, on November 5, 2010, M&T Bank filed a separate action to foreclose the $348,000 mortgage. Each party asserted having a first mortgage lien on the property.

¶ 10      On January 28, 2011, an assignment of the $348,000 mortgage from MERS to M&T Bank was recorded.[1]

¶ 11      On May 20, 2011, U.S. Bank filed a motion to dismiss M&T Bank's suit under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). It argued that it was a defendant in the suit because M&T Bank named MERS, U.S. Bank's predecessor in interest, as a defendant by virtue of the $350,000 mortgage. U.S. Bank argued that it had paid off M&T Bank's loan. M&T Bank's response asserted that its lien was never paid. The trial court denied the motion to dismiss on January 31, 2012.

¶ 12      On March 2, 2012, U.S. Bank filed an answer to M&T Bank's complaint, and it also asserted the affirmative defenses of: (1) payoff of the $348,000 mortgage; (2) FATIC's certificate of release; and (3) *bona fide* purchaser status.

¶ 13      On February 10, 2014, U.S. Bank filed a motion for summary judgment on the issue of lien priority. It argued that under *Bank of New York v. Langman*, 2013 IL App (2d) 120609, the *bona fide* purchaser doctrine applied to instances of forged and fraudulent mortgage releases. It argued that it should be deemed a *bona fide* purchaser because it took its mortgage interest in the property for valuable consideration, and neither it nor FATIC had any reason to know or suspect that Mallinckrodt had provided a forged payoff statement to divert the money intended to pay off the $348,000 mortgage.

¶ 14      U.S. Bank attached to the motion an affidavit of Elsa Fuchs, the "Senior Claims Counsel" at FATIC. She averred, in relevant part, that FATIC was not notified that there was a problem with the wire transfer to pay off the M&T Bank mortgage or that M&T Bank did not receive the funds. She further averred that neither U.S. Bank nor FATIC had any reason to know or suspect that Mallinckrodt provided an altered payoff statement to divert the payoff proceeds for his own personal use "or to fraudulently procure a false and wrongful Certificate to be recorded on the Property through FATIC for the M&T Mortgage."

¶ 15      The trial court granted the motion on May 6, 2014. However, on May 8, 2014, M&T Bank filed an emergency motion seeking to vacate the ruling. M&T Bank alleged that it had inadvertently failed to file a response to the motion for summary judgment, due to its counsel's docketing error. Over U.S. Bank's objection, the trial court granted the motion on May 13, 2014, and vacated the grant of summary judgment.

¶ 16      M&T Bank filed a response to the motion for partial summary judgment on May 19, 2014. It argued that U.S. Bank was on notice of irregularities in the forged payoff statement because the document stated that the funds were payable to MB Financial Bank rather than M&T Bank.

---

[1]The assignment states that the mortgage was conveyed prior to November 3, 2010.

¶ 17     On June 6, 2014, U.S. Bank filed a reply in support of its motion for partial summary judgment. It argued that the title insurance commitment revealed the $348,000 mortgage but did not show M&T Bank as either a mortgagee or a lender. Rather, it showed MERS as the mortgagee and nominee for the lender, First Security. U.S. Bank argued that, because M&T Bank neglected to timely record any assignment of the $348,000 mortgage to itself or any other document amending the lender designation of the mortgage, it left itself vulnerable to the possible fraudulent actions of the lender, First Security, and its president, Mallinckrodt. U.S. Bank argued that the loss from the fraud should be borne by M&T Bank because it agreed to have First Security act as its lender; it failed to record anything that would show third parties that M&T Bank had a payoff interest in the $348,000 mortgage; and M&T Bank's response did not point out how or when U.S. Bank and/or FATIC would have been put on notice of M&T Bank's interest.

¶ 18     On June 9, 2014, the trial court consolidated the two lawsuits into the U.S. Bank case.

¶ 19     A hearing on the motion for partial summary judgment took place on June 17, 2014. At the hearing, M&T Bank's counsel stated that the bank was not required to record the assignment of its interest in the property, though he stated that the "better practice" would have been to "put the world on notice" by doing so. The trial court granted the motion, finding that U.S. Bank took the $350,000 mortgage as a *bona fide* purchaser without notice of the $348,000 mortgage to M&T Bank. It ruled that, therefore, the U.S. Bank mortgage lien had priority over the M&T Bank mortgage lien. In its order, the trial court included language under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no reason to delay the enforcement or appeal of the order.

¶ 20     M&T Bank filed a motion to reconsider on July 16, 2014. It argued that it had a first priority mortgage on the property because its mortgage was recorded before U.S. Bank's mortgage, and M&T Bank never authorized or signed a mortgage release. It argued that the certificate of release was not from the lender and failed to follow known industry protocols.

¶ 21     U.S. Bank filed a response to the motion to reconsider on September 10, 2014. It argued that M&T Bank was raising a new legal theory, which was not permissible for a motion to reconsider, by bringing up the payoff protocols. It further argued that, without record notice or other notice to U.S. Bank or the title company of M&T Bank's interest, the *bona fide* purchaser rule allowed U.S. Bank to rely on the title report, payoff statement, and certificate of release to take priority of title over M&T Bank's nonrecord interest in the property.

¶ 22     On September 30, 2014, M&T Bank filed an emergency motion to file an additional appearance and amend the motion to reconsider. On October 2, 2014, the trial court granted the request to file an additional appearance and denied the request to amend the motion to reconsider. However, it orally stated that the "most efficient way to handle" the motion was to allow M&T Bank to reply with a "different focus" than what was contained in the motion, and then U.S. Bank would be allowed to file a surreply. The trial court stated that M&T Bank was now focusing on the argument that *Langman* was inapposite because here the release was not recorded at the time of the U.S. Bank mortgage.

¶ 23     M&T Bank filed its reply in support of its motion to reconsider on October 10, 2014. It argued, in relevant part, that the forged payoff statement and the title insurer's commitment were not recorded in the chain of title when U.S. Bank funded its loan, unlike in *Langman*, so U.S. Bank could not be considered a *bona fide* purchaser.

¶ 24    On October 21, 2014, U.S. Bank filed a motion to strike M&T Bank's reply in support of its motion to reconsider, arguing that it improperly expanded the scope of relief sought and introduced new facts, issues, and arguments in opposition to the grant of summary judgment. The trial court denied the motion to strike on October 24, 2014. The trial court stated that there was nothing "brand new" in the motion that would change the court's analysis *vis-a-vis* its original decision.

¶ 25    U.S. Bank filed a surreply on October 31, 2014. It argued, in part, that in July 2007 the record title showed that First Security, not MERS or M&T Bank, had standing to foreclose and/or release the $348,000 mortgage as the mortgagee/holder of indebtedness.

¶ 26    On November 13, 2014, the trial court denied M&T Bank's motion to reconsider. M&T Bank timely appealed.

## II. ANALYSIS

¶ 28    Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. We review *de novo* summary judgment rulings. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13.

¶ 29    M&T Bank argues that its mortgage is superior to U.S. Bank's mortgage because it was recorded two years prior and because U.S. Bank now admits that M&T Bank's mortgage was not paid off. M&T Bank maintains that U.S. Bank's motion for partial summary judgment is factually and legally insufficient to show that U.S. Bank's mortgage is superior because Fuchs's attached affidavit fails to comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). M&T Bank argues that the affidavit does not identify facts showing reasonable reliance; it does not have attached sworn or certified copies of all documents on which the affiant relies; it consists of general conclusions rather than facts admissible in evidence; and there is nothing in the affidavit to show that the affiant had any first-hand information about the forged payoff statement or the circumstances surrounding Mallinckrodt's fraud.

¶ 30    M&T Bank further argues that, as a matter of law, U.S. Bank was not entitled to rely on a forged payoff statement as if it were a recorded forged release of the mortgage, which was at issue in *Langman*. There, this court stated, "[T]he unauthorized release of a debt does not discharge the debt as between the original parties; but subsequent purchasers, without notice or anything to put them on inquiry of an adverse title or lien, may rely on the *recorded release* and will take priority of title over the original lienholder." (Emphasis added.) *Langman*, 2013 IL App (2d) 120609, ¶ 21. We held that the subsequent mortgagee could not rely on this doctrine to obtain a *bona fide* purchaser status, because the holder of the original mortgage interest recorded a notice of foreclosure (*lis pendens*) of its fraudulently released mortgage before the subsequent mortgagee extended its mortgage. *Id.* ¶ 22.

¶ 31    M&T Bank argues that reasonable and innocent reliance by a purchaser on a forged recorded release warrants characterizing the purchaser as *bona fide* and entitled to take title free of the encumbrance because it fosters confidence in public records. See *Lennartz v. Quilty*, 191 Ill. 174, 179 (1901) ("[P]ublic records of conveyances and instruments affecting the title to real estate are established by statute to furnish evidence of such title, and a

purchaser may rely upon such records in security unless he has notice or is chargeable in some way with notice of some title, conveyance, or claim inconsistent therewith."). M&T Bank argues that, in contrast, U.S. Bank does not cite any authority that warrants making reliance on a privately-submitted payoff statement (stating that a mortgage is not released) the equivalent of reliance on a recorded release of a mortgage, nor does U.S. Bank make a public-policy argument supporting its position.

¶ 32    Last, M&T Bank argues that the certificate of release was wrongly issued by FATIC and does not disturb M&T Bank's right as the senior mortgagee. M&T Bank cites section 10 of the Mortgage Certificate of Release Act (Act) (765 ILCS 935/10 (West 2010)), which states, "Receipt of payment pursuant to the lender's written payoff statement shall constitute authority to record a certificate of release." M&T Bank argues that there is nothing in Fuchs's affidavit or in the record indicating that FATIC received any receipt of payment from M&T Bank. M&T Bank contends that, while Fuchs stated that FATIC was never notified that there was a problem or that M&T Bank did not receive payment, notification would not have been expected given that the certificate of release was prepared the day after funds were wired to Mallinckrodt. M&T Bank maintains that the authority bestowed upon a title insurer under the Act is not taken lightly by the legislature, as the Act provides harsh penalties for the wrongful issuance of a release under the statute. See 765 ILCS 935/45 (West 2010) (title insurance company liable for actual damages sustained due to the recording of a wrongful or erroneous certificate of release, as well as attorney fees and costs). M&T Bank argues that in this case FATIC is attempting to shift the loss caused by Mallinckrodt's fraud to M&T Bank.

¶ 33    U.S. Bank argues that we should dismiss the appeal because M&T Bank's arguments were not properly before the trial court as part of U.S. Bank's motion for partial summary judgment. U.S. Bank notes that, in M&T Bank's response to the motion, M&T Bank argued that U.S. Bank was on notice of irregularities in the forged payoff statement because the document stated that the funds were payable to MB Financial Bank rather than M&T Bank. At the hearing on the motion, M&T Bank's counsel also stated that M&T Bank was not required to record the assignment of its interest in the property. The trial court stated that, although recordation was not required, the lack of recordation meant that U.S. Bank could not have been on notice that the payoff statement wrongly stated that the funds should go to MB Financial Bank rather than M&T Bank.

¶ 34    U.S. Bank argues that M&T Bank does not argue that the trial court erred in this finding but, rather, M&T Bank raises four additional arguments not presented in its response to the motion for summary judgment. U.S. Bank argues that M&T Bank raised its argument about the seniority of its mortgage, the failure of U.S. Bank to pay the mortgage, and the wrongfully-issued certificate of release for the first time in its reply in support of its motion to reconsider. U.S. Bank points out that the purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence, changes in the law, or errors in the trial court's previous application of existing law. *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324 (2010). U.S. Bank notes that it filed a motion to strike the reply in support of the motion to reconsider and that the trial court denied the motion because there was nothing "brand new" in the motion that would change the trial court's analysis. U.S. Bank argues, however, that the trial court should not have considered the additional issues as part of the motion to reconsider, and the issues should also not be considered as part of this appeal. U.S. Bank

additionally argues that M&T Bank's argument that the affidavit is insufficient should be deemed forfeited because M&T Bank raises it for the first time on appeal.

¶ 35    U.S. Bank argues that, even if we consider the merits of M&T Bank's arguments, we should still affirm the trial court's ruling that U.S. Bank's mortgage has priority over M&T Bank's mortgage. U.S. Bank cites section 30 of the Conveyances Act, which states: "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice ***." 765 ILCS 5/30 (West 2010). U.S. Bank argues that, during the over-six-year gap between when the $348,000 mortgage was recorded (August 12, 2005) and when the assignment from MERS to M&T Bank was recorded (January 28, 2011), M&T Bank's interest as the lender (in lieu of First Security) was not disclosed to U.S. Bank or any other third parties. U.S. Bank argues that it is even unclear when M&T Bank actually became the note holder for the mortgage, as the 2011 recorded assignment states only that it was conveyed before November 3, 2010. U.S. Bank argues that, therefore, the only disclosed lender of record at the time of U.S. Bank's payoff and release of the $348,000 was First Security.

¶ 36    U.S. Bank recognizes the general rule that a lien recorded first in time has priority over subsequently-recorded liens. See *Union Planters Bank, N.A. v. FT Mortgage Cos.*, 341 Ill. App. 3d 921, 925 (2003). However, U.S. Bank points out that circumstances can exist in which a later-recorded lien has priority over an earlier-recorded lien. See *id.* U.S. Bank maintains that this is such a situation; it argues that, acting in good faith, without notice, and for valuable consideration, it should not be required to look beyond the lender shown in the $348,000 mortgage to determine who holds the note. U.S. Bank notes that the title commitment for the refinancing closing showed that the mortgagee was MERS, as nominee for the lender, First Security. U.S. Bank argues that M&T Bank fails to point out how it or FATIC would have known at the time of the refinancing that First Security was not the loan servicer or that M&T Bank was the holder of the note for the $348,000 mortgage when the mortgage assignment was not recorded until January 2011. U.S. Bank argues that, without record notice or any other notice of M&T Bank's interest, U.S. Bank's interest should take priority over M&T Bank's interest.

¶ 37    U.S. Bank cites *Langman* for the proposition that a mortgagee who takes an interest in property for valuable consideration, without notice of another's interest in the property, may take its interest free and clear of the interest of that other party. U.S. Bank notes that *Langman* cites three other cases, which U.S. Bank claims support its position: *Ogle v. Turpin*, 102 Ill. 148 (1882), *Lennartz*, 191 Ill. 174, and *Vogel v. Troy*, 232 Ill. 481 (1908). *Langman*, 2013 IL App (2d) 120609, ¶ 21.

¶ 38    In *Ogle*, the property owner, Herman Allen, mortgaged his property to a man named Runyan. *Ogle*, 102 Ill. at 150. Runyan endorsed, sold, and transferred the notes to David Ogle. However, Runyan then obtained a property deed from Allen in lieu of foreclosure. Runyan recorded a release of the mortgage and subsequently obtained his own mortgage from a bank. *Id.* Ogle later sought to foreclose on the property. *Id.* at 151. Our supreme court held that the bank had a superior lien on the property because a purchaser or encumbrancer could rely on and be protected by a clear and regular title of record if the party did not have notice of the adverse titles or liens. *Id.* at 152. The court stated, "[A]ll persons having any deed, mortgage, or other instrument in writing relating to or affecting the title to land, shall

record it, or failing to do so, as against innocent subsequent purchasers or lienholders he must be precluded from asserting his claim." *Id.*

¶ 39　　Similarly, in *Lennartz*, the court stated that a purchaser has a right to rely on public records of conveyances and instruments affecting real estate title unless he has notice or is chargeable with notice of some inconsistent title, conveyance, or claim. *Lennartz*, 191 Ill. at 179. The court held that a purchaser who acted in good faith and paid consideration had a right to rely on a record of release showing the payment and discharge of a lien, even though the release was fraudulent. *Id.* It stated, "There was nothing in this case to give notice to [the purchaser] that appellant had any lien upon the property, and she was protected by the record." *Id.* at 180.

¶ 40　　In *Vogel*, a woman named Hulda Vogel owned a $2,000 note secured by a trust deed of property. Vogel held the note, but the named trustee had possession of the trust deed. *Vogel*, 232 Ill. at 482-83. The property was sold, and the trustee told the prior owners that the original note had been lost. He had them execute a new note. *Id.* at 483. He then executed a release deed from himself to the prior owners for the $2,000 loan, and he obtained that money from the new purchaser's agents and converted it for his own use. The abstract was amended to show that the title was free and clear of the encumbrance. *Id.* at 483-84. The supreme court held that Vogel failed to record anything showing an interest in the indebtedness secured by the trust deed and that the purchaser had done all she reasonably could to protect herself from Vogel's secret lien when she purchased the property. *Id.* at 486-88.

¶ 41　　U.S. Bank argues that in all of the above-mentioned cases, like this case, the court found that, as a result of the neglectful inaction by the note holder to record an assignment or other document showing an interest in the note secured by a trust deed or mortgage, the later party in interest to the property, without notice and paying valuable consideration, was found to have a superior claim.

¶ 42　　Last, U.S. Bank argues that we should not consider M&T Bank's arguments regarding U.S. Bank's affirmative defenses that M&T Bank had been paid and that U.S. Bank could rely on the certificate of release because summary judgment was based solely on its third affirmative defense of *bona fide* purchaser status. U.S. Bank maintains that, even if we consider the certificate of release, FATIC issued the certificate in reliance on the payoff statement submitted by Mallinckrodt, who was the president of the record lender for the $348,000 mortgage, First Security. U.S. Bank argues that, without any recorded assignment of that mortgage to M&T Bank at the time of the refinance closing, FATIC would not have known that M&T Bank was the lender and would not have been looking for a payoff statement from it.

¶ 43　　M&T Bank responds that it has not forfeited its arguments, because it has consistently asserted that it is the senior mortgagee and that under *Langman* U.S. Bank did not properly rely on the phony payoff statement.

¶ 44　　On the merits, M&T Bank responds that U.S. Bank had notice that MERS was the mortgagee of the $348,000 mortgage, on behalf of the original lender and the "Lender's successors and assigns." M&T Bank asserts that it is such a successor and assign and that identifying the secured creditor of the mortgage was "literally only a few keystrokes away." M&T Bank cites a Seventh Circuit case, *Macon County, Illinois v. MERSCORP, Inc.*, 742 F.3d 711 (7th Cir. 2014), which describes the difference between notes and the MERS

mortgages that secure the notes. There, the court stated as follows, in relevant part. MERS is an online system for tracking assignments of mortgage loans. A bank obtaining a mortgage can register it on MERS and assign it to MERSCORP, which records it in the county where the property is located to provide notice to subsequent purchasers and creditors of the property. *Id.* at 712. MERSCORP is the mortgagee of record, but its assignment is not substantive, because it is not the lender; it has no financial interest in the mortgage. Assigning a mortgage to MERSCORP allows repeated assignments of the mortgagor's promissory note, which is the contractual commitment to repay the loan, to successive lenders. *Id.* "These assignments are not recorded in the county land registries because they are not assignments of mortgages or other property interests." *Id.* Therefore, the note can be successively assigned to other financial institutions without the assignments being recorded. *Id.* That is, the subsequent assignees do not have a mortgage to record, because they do not possess assignments of the mortgage MERSCORP holds, which is the property interest securing the debt but, rather, hold the mortgagor's promissory note. "The note creates the debt secured by the mortgage, but the mortgage is owned by MERSCORP by virtue of the assignment of the mortgage to it, and not by the note holder." *Id.*

¶ 45     M&T Bank argues that U.S. Bank's motion for summary judgment states that before its closing it had constructive notice of the MERS mortgage and actual notice that M&T Bank had the first lien and was required to be paid for a release of that mortgage before U.S. Bank would hold the senior lien. M&T Bank argues that U.S. Bank therefore judicially admitted that it had actual and constructive notice of M&T Bank's interest as the senior encumbrancer, and U.S. Bank may not now claim that it had no notice of M&T Bank's interest when it funded its mortgage in 2007.

¶ 46     M&T Bank further argues that it had no duty to make a public record that it was the note holder (prior to the assignment recorded in 2011), because there is no place to make a public record of note ownership. M&T Bank argues that U.S. Bank knew when it funded its mortgage that it was junior to the MERS 2005 recorded mortgage, and U.S. Bank could have easily contacted MERS to obtain information about the debt servicer or note holder. M&T Bank argues that the cases relied on by U.S. Bank are distinguishable because U.S. Bank does not claim to have relied on any recorded document, and M&T Bank was not required to record its interest in the note. M&T Bank argues that *Vogel*, in particular, is distinguishable because that case had a fraudulent mortgage release recorded, whereas here there was no such document. "Rather, U.S. Bank relied on the good faith of" Mallinckrodt.

¶ 47     We first address U.S. Bank's assertion of forfeiture. We agree with M&T Bank that, from the beginning, it has consistently taken the position that it was the senior lienholder, that it was not required to record its interest beyond the mortgage recorded in 2005, and that this case is distinguishable from *Langman*. These arguments are consistent with the arguments it now advances on appeal. Moreover, the trial court allowed M&T Bank to file a reply in support of its motion to reconsider that had a "different focus" than the motion, and it gave U.S. Bank the opportunity to file a surreply. The trial court also denied U.S. Bank's motion to strike M&T Bank's reply in support of its motion to reconsider, stating that there was nothing "brand new" in the reply. Given that M&T Bank has remained consistent in its broader arguments and that the parties had the opportunity in the trial court to fully address the arguments presented on appeal, we find no forfeiture for the majority of M&T Bank's arguments. We do agree that it forfeited its argument about Fuchs's affidavit's alleged lack

of compliance with Rule 191(a), as M&T Bank did not raise this argument in the trial court. See *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 383 (2008) (failure of the party objecting to the sufficiency of a Rule 191(a) affidavit to raise the challenge in the trial court results in forfeiture).

¶ 48 We next look at M&T Bank's contention that U.S. Bank made binding admissions in its motion for summary judgment. M&T Bank did not raise this argument until its reply brief, thereby forfeiting it for review. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued are forfeited and may not be raised in the reply brief). Even otherwise, U.S. Bank does not dispute that it was aware of the $348,000 mortgage and of that mortgage's seniority prior to U.S. Bank's closing. While U.S. Bank referred to that mortgage in its summary-judgment motion as the "M&T Mortgage," the motion, viewed as a whole, does not make a binding admission that U.S. Bank knew at the time of its closing that the note on the mortgage was held by M&T Bank. This is especially true considering the evolving nature of both parties' arguments in this case.

¶ 49 We agree with M&T Bank that this case is distinguishable from *Langman* because the relevant portion of that case states that subsequent purchasers may rely on a "recorded release" to take priority of title over the original lienholder, as long as they are without notice of any adverse title or lien. *Langman*, 2013 IL App (2d) 120609, ¶ 21. Here, in contrast, there was no recorded release of the $348,000 mortgage at the time of the refinancing; FATIC recorded a release weeks after the closing, so U.S. Bank could not have relied on it at the time of the closing.[2] Similarly, in *Ogle* the subsequent lienholder relied on a recorded release (*Ogle*, 102 Ill. at 151-52), and the purchasers in *Lennartz* and *Vogel* also relied on recorded releases (*Lennartz*, 191 Ill. at 179; *Vogel*, 232 Ill. at 485-86). On the other hand, in this case U.S. Bank was well aware of the $348,000 debt and that mortgage's seniority.

¶ 50 The central issue is whether M&T Bank lost its senior lienholder status because it did not have a recorded interest in the note at the time of U.S. Bank's refinancing. That is, U.S. Bank's position is that the recorded documents indicated that First Security was still the lender of the mortgage, so U.S. Bank reasonably relied on the release that Mallinckrodt provided, because he was the president of First Security. The trial court similarly found that recordation of M&T Bank's interest was not required, but that the lack of recordation meant that U.S. Bank could not have been on notice that the payoff statement wrongly stated that the funds should go to MB Financial Bank rather than M&T Bank.

¶ 51 The flaw in U.S. Bank's reasoning is that it does not account for the role of MERS as the mortgagee. As M&T Bank points out, case law (albeit federal)[3] indicates that the very purpose of having MERS as the mortgagee is to allow repeated assignments of notes without recordation, as MERS continues to hold the mortgage. *MERSCORP, Inc.*, 742 F.3d at 712. The Eighth Circuit Court of Appeals has stated:

> "With MERS, initial mortgage loans are recorded with the circuit clerk *** and MERS is listed as the mortgagee of record. When an interest in the mortgage is

---

[2]We recognize that U.S. Bank did not rely on the subsequently recorded release as a basis for granting summary judgment but, rather, relied on its argument that it had a *bona fide* purchaser status. Still, the lack of a prior recorded release serves to distinguish this case from others.

[3]While cases from lower federal courts are not binding, we may consider them as persuasive authority. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30.

transferred among MERS members, the MERS system tracks the assignments for priority purposes. MERS at all times remains the mortgagee of record in the county property records. The subsequent assignments are not recorded, and no recording fees are paid." *Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 929 (8th Cir. 2013).

Illinois courts have also acknowledged the role of MERS, to some extent. See *Deutsche Bank National Trust v. Cichosz*, 2014 IL App (1st) 131387, ¶ 3 ("MERS is well known in the foreclosure setting as a membership organization that typically records, trades, and forecloses loans on behalf of many lenders, acting for lender accounts rather than their own."); see also *In re Application of the County Treasurer & ex officio County Collector*, 2011 IL App (1st) 101966, ¶ 14 (describing witness testimony about MERS's purpose).

¶ 52 This whole case has arisen as the result of fraud by a third party, Mallinckrodt. "Where one of two innocent persons must suffer by reason of the fraud or wrong conduct of another, the burden must fall upon him who put it in the power of the wrongdoer to commit the fraud or do the wrong." *Connor v. Wahl*, 330 Ill. 136, 146 (1928). The question here is whether U.S. Bank and/or FATIC should have checked with MERS to determine the holder of the note, considering MERS's role in the mortgage industry and that U.S. Bank and FATIC knew that MERS was the listed mortgagee of the $348,000 loan, or whether they could have reasonably relied on Mallinckrodt's payment statement given that he was the president of First Security, the lender listed on the mortgage. In light of the current status of Illinois case law on this subject and the unique facts of this case, this question cannot be answered as a matter of law on summary judgment. Summary judgment is not a means to try questions of fact but, rather, serves simply to determine if triable questions of fact exist (*Pielet*, 2012 IL 112064, ¶ 53), and here there is a genuine issue of material fact as to whether U.S. Bank and/or FATIC reasonably relied on Mallinckrodt's payoff statement. Accordingly, we reverse the trial court's grant of summary judgment and remand the cause for further proceedings.

¶ 53                                              III. CONCLUSION
¶ 54 For the reasons stated, we reverse the judgment of the Du Page County circuit court and remand for further proceedings consistent with this opinion.

¶ 55 Reversed and remanded.

- 11 -